STATE of Iowa, Appellee,

v.

Gerald R. LONG, Appellant.

No. 97–1165.

Supreme Court of Iowa.

May 31, 2001.

Linda Del Gallo, State Appellate Defender, and Shellie L. Knipfer and John P. Messina, Assistant State Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, Roxann M. Ryan, Assistant Attorney General, John P. Sarcone, County Attorney, and Melodee Hanes and George Karnas, Assistant County Attorneys, for appellee.

LARSON, Justice.

Gerald R. Long was convicted of first-degree murder and appealed, arguing error of the district court in admitting evidence in violation of our hearsay rules and his confrontation rights under the Sixth and Fourteenth Amendments to the United States Constitution. We reverse and remand.

## I.  *Facts and Prior Proceedings.*

Due to problems with the court reporter in this case, the parties have had a difficult time producing a transcript. In fact, significant portions of the transcript were never produced by the reporter. The parties have, however, created a reasonably complete record through stipulation and piecing together portions of the available transcript. This record establishes the following facts.

On July 25, 1996, Jillene Long was shot to death in her home by her husband, this defendant. The defendant admits he shot the victim but defends on a theory of diminished capacity. Jill had lived in fear of the defendant for some time prior to the shooting because he was physically and verbally abusive. In the week prior to the killing, Long became irritated at his wife for waking him, and he shot at her, but missed. Jill phoned 911, but the call was

cut short. When the operator called back, the defendant answered the phone. When Jill got on the phone, she said there was no problem. She later said to others she had told the dispatcher there was no problem because Long had threatened her. After this incident, the defendant sought emergency room treatment for paranoid, suicidal, and homicidal thoughts. He was routed to a number of different hospitals and psychiatrists.

As part of the diagnostic protocol for the defendant, Jill was contacted on July 22 by Dr. Preston, a psychiatrist. Dr. Preston described Jill as "anxious and angry," angry both at Dr. Preston for suggesting she leave her residence and angry at the defendant. Dr. Preston testified that Jill was concerned for her safety and angry because she "wanted [the defendant] to remain hospitalized for an extended length of time, such that he would no longer be a risk to [her] or her family." However, Dr. Preston informed Jill, "[W]e are not able to do that . . . we cannot control when they leave and that we're not a jail or a prison."

The next day, July 23, the defendant was transferred to another hospital. A social worker from this hospital contacted the defendant's wife who, during that conversation, provided additional information that has become the focal point of this appeal. The social worker testified that,

[Jill] said [the defendant's] brother, David, had been in jail towards attempted murder of his girlfriend. She said that David had coached [the defendant] on what to say to psychiatrists regarding what someone might be trying to say if they were mentally ill, what they would try to say.

On July 24, Jill called the police again. According to the dispatcher, "[Jill] said she wanted us to get him out of there [the hospital] and arrest him. I said that we couldn't do that." In his testimony, the dispatcher explained, "He was already locked up. We don't pick people up from a hospital bed until they're going to be discharged." An officer also testified that on the 24th Jill indicated to him she was not satisfied with the actions of various agencies she had contacted for help, including the Des Moines Police Department, and she was particularly concerned about the lack of activity or action being taken by a certain detective. On the same day, Jill met with an attorney to prepare a petition for dissolution of marriage. This attorney described her as "express[ing] a great deal of anxiety and a great deal of anger."

On July 25, the defendant was discharged from the hospital with prescriptions for antipsychotic and antidepressant medications and the understanding he would be voluntarily admitted for substance abuse treatment at another facility. The defendant went to this facility, but when he learned it would cost $9000, he refused treatment. According to the defendant, he went home, fell asleep in his recliner, and the next thing he remembered he found himself standing over his wife's body. She had been shot several times.

At trial both sides presented expert testimony. The testimony was conflicting as to whether the defendant was suffering from posttraumatic stress disorder stemming from his military service in Vietnam and whether he was in a disassociative state at the time of the killing. The theory of the defense was that the defendant was suffering from diminished capacity to commit first-degree murder. The jury returned a verdict of guilty to the charge of first-degree murder.

## II.  *Application of Rule 803(4).*

■ The sole issue to be resolved is whether the district court erred in admitting hearsay statements made by the vic-

tim to the psychiatric social worker. The State, as proponent of the evidence, has the burden of showing the statement falls within an exception to the hearsay rule. *State v. Miller,* 204 N.W.2d 834, 840 (Iowa 1973). The State relied on Iowa Rule of Evidence 803(4) to support the admission of the victim's statement about the defendant having been coached on faking a mental condition. Under rule 803,

> [t]he following are not excluded by the hearsay rule . . .
>
> . . . .
>
> **(4) Statements for Purposes of Medical Diagnosis or Treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

■ In applying this rule, we have adopted the test of *United States v. Renville,* 779 F.2d 430 (8th Cir.1985), under which the proponent of the questioned evidence must satisfy a two-part test. *See State v. Hildreth,* 582 N.W.2d 167, 169–70 (Iowa 1998). Under *Renville,* the test is

> first, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis.

*Renville,* 779 F.2d at 436. The second test of *Renville* is not challenged by the defendant. He concentrates on the first element, claiming the State has failed to carry its burden of demonstrating Jill's motive was consistent with the purpose of promoting the defendant's treatment.

■ According to one authority,

> [t]he rationale underlying the Rule 803(4) exception for statements made for purposes of treatment is that the declarant's motive guarantees their trustworthiness, since he has a "motive to disclose the truth because his treatment will depend in part upon what he says."

As the declarant's motive to promote treatment or diagnosis is the factor crucial to reliability, Rule 803(4) does not require the statement to be made to a physician. The notes to the Rule indicate that statements to hospital attendants, ambulance drivers, or even members of the family may be admissible provided they are made for purposes of diagnosis or treatment.

4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 803(4)[01], at 803–152 (1994) [hereinafter Weinstein] (quoting *Meaney v. United States,* 112 F.2d 538, 540 (2d Cir.1940)) (other citations omitted); *see also State v. Mann,* 512 N.W.2d 528, 535 (Iowa 1994) (noting the rationale of rule 803(4) is the "probability that the patient will not fabricate statements made to the physician if the patient's future treatment and well-being are at stake") (citing *Devore v. Schaffer,* 245 Iowa 1017, 1021, 65 N.W.2d 553, 555 (1954)). The defendant appears to concede that a social worker may be a health care person covered by rule 803(4).

Ordinarily, because of the gravity of the condition for which the declarant is seeking treatment, the assurance of truthfulness is significant. In fact,

> a statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility that a trier of fact may not think replicated by courtroom testimony.

*White v. Illinois,* 502 U.S. 346, 356, 112 S.Ct. 736, 743, 116 L.Ed.2d 848, 859 (1992).

The hearsay exception under rule 803(4) does not require the statement to be made by the person to be diagnosed or treated. Third persons who have a strong motivation to obtain satisfactory treatment or diagnosis for a person in a close relationship, such as a parent or spouse, would ordinarily be motivated to be truthful. In fact, courts have generally applied the rationale of rule 803(4) in those circumstances.

> Statements relating to someone else's symptoms, pains, or sensations would be admissible, provided again that they were made for purposes of diagnosis or treatment of that person. The relationship between declarant and patient will usually determine admissibility. In the case of a child, a court would undoubtedly assume the absence of any motive to mislead on the part of the parents. As the relationship becomes less close, the statement becomes less reliable, both because the motive to tell the truth becomes less strong, and because even a stranger in good faith may not be able to describe another's physical pain and suffering infallibly as an intimate.

Weinstein ¶ 803(4)[01], at 803–152 to 803–153.

But what about a declarant whose motivation is not clearly to receive effective treatment for another but possibly to suppress or twist the truth to accomplish the declarant's own ends? This phenomenon has been noted in cases in which a parent is suspected of abusing a child. One case, noting the general view that a parent would presumably be truthful in obtaining treatment for a child, noted:

> Conversely, the mere fact that the patient's parent is the declarant does not automatically establish the requisite motivation—*i.e.*, that "the declarant's motive in making the statement to the medical provider must be to promote treatment or diagnosis." Rather, as with any other foundational fact, the declarant's motivation, which is the touchstone of reliability, must be assessed by the court on a case-by-case basis.

*State ex rel. Juvenile Dep't of Multnomah County v. Pfaff,* 164 Or.App. 470, 994 P.2d 147, 155 (1999) (citation omitted).

This defendant argues the State failed to show the declarant was motivated to help the defendant get adequate treatment. The defendant suggests that, rather, the declarant's purpose in making the statement was suspect—perhaps to secure jail time for the defendant. In addition, the victim had recently initiated a divorce proceeding against the defendant. This suggests, to paraphrase Weinstein, the relationship had become less close and the statement less reliable because the motive to tell the truth had become weaker. *See* Weinstein § 803(4)[01], at 803–153.

A. *Standard of review.* In *Mann* we considered the admissibility of a statement made by a sex-abuse victim to her doctor, which related details of the event (including the type of truck involved). The defendant claimed such details were not necessary to her treatment, and thus portions of her statement fell outside the rule 803(4) exception. We held the court properly allowed the evidence, applying an "abuse of discretion" standard. *Mann,* 512 N.W.2d at 536. Other courts, including the eighth circuit, have applied an abuse-of-discretion standard as well in applying rule 803(4). *See, e.g., Stull v. Fuqua Indus., Inc.,* 906 F.2d 1271, 1274 (8th Cir.1990); *United States v. Iron Thunder,* 714 F.2d 765, 772 (8th Cir.1983); *see also* Weinstein ¶ 803(4)[01], at 803–158 n. 19 ("[T]he appellate court may only reverse for a clear abuse of discretion" in applying rule 803(4).).

■ What we have, perhaps erroneously, referred to in cases such as *Mann* as the district court's exercise of discretion in applying rule 803(4) is perhaps more accurately a matter of deference. If a court's factual findings with respect to application of the hearsay rule are not "clearly erroneous" or without substantial evidence to support them, they are binding on appeal. *See Young v. Commonwealth,* —— S.W.3d ——, ——, 2001 WL 431243 (Ky.2001) (discussing excited-utterance exception to hearsay rule). This is properly characterized as deference to the fact-findings rather than the exercise of discretion.[1]

> Whether a particular statement qualifies as an excited utterance depends on the circumstances of each case and is often an arguable point; and "when this is so the trial court's decision to admit or exclude the evidence is entitled to deference." That is but another way of saying that when the determination depends upon the resolution of a preliminary question of fact, the resolution is determined by the trial judge under [Kentucky Rule of Evidence] 104(a) on the basis of a preponderance of the evidence, and the resolution will not be overturned unless clearly erroneous, *i.e.,* unless unsupported by substantial evidence.

*Id.* at —— (citations omitted).

■ Iowa Rule of Evidence 104(a) provides for preliminary resolution of fact issues underlying the admissibility of evidence. Under this rule,

> [p]reliminary questions concerning the qualification of a person to be a witness,

the existence of a privilege, or *the admissibility of evidence* shall be determined by the court, subject to the provisions of subdivision "b" [relevancy conditioned on fact]. In making its determination it is not bound by the rules of evidence except those with respect to privileges.

Iowa R. Evid. 104(a) (emphasis added). Under federal rule 104(a), the standard of proof is a preponderance of the evidence, *Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144, 152–53 (1987), and we believe that is the proper standard of proof to be applied under our rule 104(a).

The rationale for federal rule 104(a) is explained in the advisory committee's comment to the rule, and we believe that comment is pertinent here. It states:

> The applicability of a particular rule of evidence often depends upon the existence of a condition. Is the alleged expert a qualified physician? Is a witness whose former testimony is offered unavailable? Was a stranger present during a conversation between attorney and client? In each instance, the admissibility of evidence will turn upon the answer to the question of the existence of the condition. Accepted practice, incorporated in the rule, places on the judge the responsibility for these determinations.
>
> To the extent that these inquiries are factual, the judge acts as a trier of fact. Often, however, rulings on evidence call for an evaluation in terms of a legally set standard. Thus when a hearsay statement is offered as a declaration

---

1. One authority has cautioned against confusing the *deference* accorded to preliminary fact-findings under rule of evidence 104(a) with the exercise of *discretion:*

> Some courts have suggested that Rule 104 was intended to confer discretion on the trial judge regarding the admissibility of

evidence, a suggestion totally at odds with Rule 403, which is intended to limit and control judicial discretion in order to protect litigants.

21 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5053, at 146 (2001 Supp.).

against interest, a decision must be made whether it possesses the required against-interest characteristics. These decisions, too, are made by the judge.

In view of these considerations, this subdivision refers to preliminary requirements generally by the broad term "questions" without attempt at specification.

Fed.R.Evid. 104(a) advisory committee's note (citations omitted).

The comment to Iowa's rule 104(a) explains additional rationale for the rule:

Rule 104(a) establishes a procedure whereby preliminary matters concerning both exclusion and admission of evidence can be addressed by the Court. While Iowa has enjoyed the liberal use of the motion in limine with regard to the *exclusion* of an anticipated evidentiary offer, there is no Iowa counterpart regarding an advance determination with respect to *admission*. It is felt that the rule would greatly facilitate the orderly admission of evidence.

Iowa R. Evid. 104(a) committee comment (1983) (emphasis added).

As rule 104(a) envisions, it has been common for courts to use the rule to preliminarily determine the admissibility of proffered evidence. We have recommended the use of rule 104(a), for example, to determine in advance the admissibility of expert testimony. *See Leaf v. Goodyear Tire & Rubber Co.*, 590 N.W.2d 525, 534 (Iowa 1999).

In a military court of appeals case, the court approved the use of a rule of evidence identical to our rule 104(a) and concluded:

When the medical exception to the hearsay rule [803(4)] is involved, the question whether the patient has the requisite state of mind and expectation of receiving a medical benefit is a pre-liminary question of fact under [rule of evidence 104(a)]. As such, it will be set aside "only if clearly erroneous."

*United States v. Kelley*, 45 M.J. 275, 280 (C.A.A.F.1996) (citation omitted).

In another case, a federal court discussed the preliminary fact-finding function of rule 104(a) in assessing a claimed exception to the hearsay rule under Federal Rule of Evidence 801:

Following the procedure contemplated by Fed.R.Evid. 104(a), the trial judge found not only that the narrative contained in the hospital record was attributable to [the declarant] but also that its trustworthiness was sufficient to permit the jury to consider it and to pass upon its (ultimate) reliability. These factual findings have ample record support.

*Onujiogu v. United States*, 817 F.2d 3, 5 (1st Cir.1987).

In a case regarding the exception to the hearsay rule for statements of co-conspirators, a federal court said:

Under [Federal] Rule 801(d)(2)(E), an out-of-court statement is not hearsay with respect to a given party if it was made by a co-conspirator of that party in furtherance of the conspiracy. In order to admit such a statement, the trial court is required to find, as preliminary facts under Fed.R.Evid. 104(a), that a preponderance of the evidence supports the conclusions that there was a conspiracy, that both the declarant and the party against whom the statement is offered were members of it, and that the statements were made in furtherance of the conspiracy.... The trial court's determinations of these preliminary facts may not be disturbed unless they are clearly erroneous. We have no difficulty in upholding the findings of the trial court in the present case.

*New York v. Hendrickson Bros.*, 840 F.2d 1065, 1073 (2d Cir.1988) (citations omitted).

In *Stringer v. Commonwealth*, 956 S.W.2d 883 (Ky.1997), the court approved the trial court's use of a rule 104(a) hearing to determine if the prerequisites for the medical-treatment exception were established. *Stringer*, 956 S.W.2d at 887–88.

 We review the admission of hearsay for errors at law, not for abuse of discretion. *State v. Tangie*, 616 N.W.2d 564, 568 (Iowa 2000); *State v. Ross*, 573 N.W.2d 906, 910 (Iowa 1998). However, we give deference to the district court's factual findings and uphold such findings if they are supported by substantial evidence. *See Tangie*, 616 N.W.2d at 569 ("We review a district court's determination that a conspiracy existed [for purposes of Iowa Rule of Evidence 801(d)(2)(E)] under the substantial-evidence test.").

 B. *The declarant's motive.* We note no specific findings by the district court concerning the elements of the State's proffer of evidence under the rule 803(4) exception. Perhaps that is because we have an incomplete record. This shortcoming is not fatal to our resolution of the appeal, however, because we will merely assume the court made a factual finding that the requirements of the *Renville* test were satisfied. In *Renville* the court also noted a lack of specific findings. It said:

> The record, however, provides no clear statement of the reasoning or findings supporting the admission of the evidence. *See* Fed.R.Evid. 104(a). We must therefore review the record evidence ourselves....

*Renville*, 779 F.2d at 440; *see also State v. Florie*, 411 N.W.2d 689, 695 (Iowa 1987) ("Trial court findings of conspiracy by a preponderance of the evidence were implicit in the trial court's rulings in [prior] cases ... [, and] we upheld those implicit

findings based on our conclusion that they were supported by substantial evidence in the record.").

 In reviewing the record in this case, we find no substantial evidence to support the district court's implicit finding that the victim was primarily motivated to obtain effective diagnosis and treatment for her husband. In fact, she seemed intent on seeing him kept in some type of confinement facility—a mental hospital or jail. We believe the evidence of her statements was clearly inadmissible. Moreover, we presume prejudice to the nonoffering party unless the contrary is affirmatively established. *State v. Rice*, 543 N.W.2d 884, 887 (Iowa 1996). Because introduction of the victim's statement concerning his possible intent to fake a mental condition went to the heart of his only defense, diminished capacity, we reverse and remand for a new trial.

**REVERSED AND REMANDED.**