# IN THE COURT OF APPEALS OF IOWA

No. 13-1912
Filed March 11, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DANIEL LOUIS HICKS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dallas County, Gregory A. Hulse,

Judge.


        The defendant appeals his conviction and sentence for sex abuse in the

second degree, indecent contact with a child, and incest.  **AFFIRMED.**


        Brent D. Rosenberg of Rosenberg & Morse, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, Heather R. Quick, Assistant Attorney

General, Wayne Reisetter, County Attorney, and Stacy Ritchie and Charles

Sinnard, Assistant County Attorneys, for appellee.


        Heard by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, J.**

Following trial by jury, Daniel Hicks was convicted of sex abuse in the second degree, indecent contact with a child, and incest, in violation of Iowa Code sections 709.1, 709.3(2), 709.12(1), 726.2, and 903B.1 (2011). Hicks raises several challenges to his conviction, which we address seriatim.

I.

Hicks first challenges the sufficiency of the evidence supporting the convictions for sex abuse in the second degree and incest. In reviewing a challenge to the sufficiency of the evidence, we consider all record evidence "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (citation omitted). A verdict will be upheld if it is supported by substantial evidence. *See State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). Substantial evidence is the quantity and quality of evidence from which a reasonable juror could conceivably find the defendant guilty beyond a reasonable doubt. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998). "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence and credit other evidence." *Sanford*, 814 N.W.2d at 615 (citation and internal quotation marks omitted).

The evidence showed the victim of the offenses was Hicks's daughter C.H. At the time of the offense, C.H. resided with Hicks; Hicks's wife, C.H.'s stepmother, and Co.H., C.H.'s half-sibling. On the evening of August 25, 2012, Hicks was home with C.H. and Co.H. C.H. wore a tank top and shorts to bed.

When C.H. was half asleep, Hicks entered her bedroom and told her she was falling off her bed. As Hicks moved C.H. on her bed, he pulled down the strap of her tank top, and kissed C.H.'s exposed left breast. Hicks then took C.H.'s hand and forced her to touch his penis under his clothes.

After Hicks returned to his bedroom, C.H. ran downstairs to find help. Finding no other adult at home, C.H. called several family members but was unable to reach anyone. C.H. then locked herself in the downstairs bathroom and called emergency assistance. C.H. told the 911 operator that her "dad was making [her] do bad stuff to him" and the "he made [her] touch him." C.H. asked the 911 operator to have the police arrive without lights or sirens to avoid tipping her father to their presence.

Officers Roll and Owen responded to the call. When the officers knocked on the door, C.H. ran out of the house crying. Officer Roll took C.H. to his patrol car and placed her in the back seat. When Officer Roll returned to the front door, Hicks was standing in the entryway clad only in a pair of gym shorts. Officer Roll told Hicks that C.H. had called 911, but the officer did not tell Hicks the nature of the call. When Officer Roll asked Hicks if he knew why the officers had responded to the scene, Hicks replied, "I would not do that to my own daughter."

When Officer Roll went back to his car, he asked C.H. what had happened. C.H. said Hicks entered her room and "started doing really bad stuff" and was "kissing her in places." She later clarified that Hicks had kissed her breast. She also said Hicks made her touch him in a "bad spot." Another officer took C.H. to Blank Children's Hospital, where a pediatric nurse practitioner with

the Regional Child Protection Center at Blank Children's Hospital, performed a sexual assault examination. The nurse swabbed C.H.'s mouth, vaginal area, rectal area, and both breasts for DNA. C.H. told the nurse Hicks had touched her left breast and forced her to touch his "bad spot." Analysis of the DNA sample from C.H.'s left breast was consistent with Hicks's DNA profile, but was only partial DNA, so an exact match could not be made. The analyst testified the probability of finding that DNA profile in a group of random, unrelated individuals was less than one in 4.9 billion. Analysis of the DNA from C.H.'s right breast was inconclusive.

Hicks challenges only the sufficiency of the evidence supporting his convictions for sex abuse and incest. Specifically, Hicks contends there is insufficient evidence he committed a "sex act." The code defines "sex act" as "any sexual contact between two persons by: . . . contact between the finger or hand of one person and the genitalia or anus of another person." Iowa Code § 702.17. C.H. testified Hicks "grabbed" her hand and made her touch "his naughty place" that is used to "pee." Although she did not want to say the word during trial, she agreed that "his naughty place" referred to Hicks's penis. While Hicks denies any such touching occurred, the jury believed C.H. over Hicks, which it was free to do. *See Sanford*, 814 N.W.2d at 615 (recognizing jury's role to weigh testimony). Hicks acknowledges C.H.'s testimony need not be corroborated, *see* Iowa R. Crim. P. 2.21(3) ("Corroboration of the testimony of victims shall not be required."); *Hildreth*, 582 N.W.2d at 170, but states this evidence "is as thin as it gets." We disagree. C.H.'s story was corroborated by

DNA evidence and Hicks's own statement that "he would not do that to his own daughter" before he was even informed why the police were on his doorstep. When viewed in the light most favorable to the State, there is substantial evidence supporting the verdicts.

II.

Hicks contends the district court erred in denying his motion for new trial, asserting the verdicts for all three counts are contrary to the weight of the evidence. A district court may grant a new trial if "the verdict is contrary to law or evidence." Iowa R. Crim. P. 2.24(2)(b)(6). "[A] verdict is contrary to the evidence under this rule if it is 'contrary to the weight of the evidence.'" *State v. Wells*, 738 N.W.2d 214, 219 (Iowa 2007) (quoting *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998)). The district court has broad power under the weight-of-the-evidence standard, including the ability to weigh the evidence and consider the credibility of witnesses. *See Ellis*, 578 N.W.2d at 658-59. Our review is limited to a review of the district court's exercise of discretion, not of the underlying question whether the verdict is against the weight of the evidence. *See State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003).

Hicks attacks two main pieces of the State's case. Hicks first argues that C.H.'s allegations and testimony are not credible. There were inconsistencies between her pretrial statements and her testimony, such as mistakenly saying the family went to an Italian restaurant for dinner on the night in question when it was a Chinese restaurant. C.H.'s demeanor, Hicks contends, is inconsistent with the claimed attack. Hicks notes C.H. did not seem upset during her interview

with a child protective services worker, she slept in her own bed when she returned home, and she played with her cousin, H.L., the next day. Hicks further argues C.H. had a motive to fabricate the incident—she told a friend "I wish I could go live with my mom, and it might happen, now that it had—because he had done that." Second, Hicks focuses on the DNA evidence. Specifically, he asserts the amount of DNA obtained was very small and could have been due to secondary transfer, such as C.H. using the same bath towel or wearing clothes laundered with Hicks's clothes. He also argues the "methodology, procedures, and reporting criteria of the DCI lab tended to overstate and exaggerate to the jury the significance of the DNA evidence found in this matter."

"Except in the extraordinary case where the evidence preponderates heavily against the verdict, trial courts should not lessen the jury's role as the primary trier of facts and invoke their power to grant a new trial." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). "A trial court should not disturb the jury's findings where the evidence they considered is nearly balanced or is such that different minds could fairly arrive at different conclusions." *Id.* Hicks made the same arguments he now makes on appeal to the jury during trial. The jury concluded the evidence proved Hicks's guilt beyond a reasonable doubt. Hicks made the same arguments he now makes on appeal in his motion for new trial, and the district court concluded the verdicts were not against the weight of the evidence. We reviewed the sufficiency of the evidence supporting two of the verdicts and concluded the verdicts were supported by substantial evidence. On appeal, the question is not whether the verdicts are contrary to the weight of the

evidence, the question is whether the district court abused its discretion in denying Hicks's motion. Other than mere disagreement with the district court's ruling on his motion for new trial, Hicks has not identified the alleged abuse of discretion, and we find none.

III.

Hicks challenges the admission into evidence of the 911 call and that portion of Officer Roll's body-microphone recording when C.H. spoke with Officer Roll in the police car. On appeal, Hicks contends the statements are hearsay and do not fall within any exception. *See* Iowa R. Evid. 5.802 (defining hearsay). We review the admissibility of hearsay evidence for errors at law. *State v. Dullard*, 668 N.W.2d 585, 589 (Iowa 2003). We give deference to the factual findings of the district court. *State v. Long*, 628 N.W.2d 440, 445 (Iowa 2001). "If a court's factual findings with respect to application of the hearsay rule are not 'clearly erroneous' or without substantial evidence to support them, they are binding on appeal." *Id.* Hicks also argues allowing the statements into evidence violated his Confrontation Clause rights.

We address the claims in reverse order. The State argues Hicks failed to preserve error with respect to his Confrontation Clause claim. At trial, Hicks interposed only a hearsay objection to the statements in the 911 recording and the body-microphone recording. Hicks contends he did not need to make an additional Confrontation Clause objection because the objection was "obvious." We conclude the claim is not preserved for our review. *See State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002) ("The rule of error preservation applies with equal

strength to constitutional issues."); *State v. Kinkead*, 570 N.W.2d 97, 102 (Iowa 1997) (discussing error preservation); *State v. Farni*, 325 N.W.2d 107, 109 (Iowa 1982) (holding the objection "calls for hearsay" was "too broad to raise the issue of the constitutional right of confrontation"). Further, the claim fails on the merits. C.H. testified at trial and was subject to cross-examination regarding the prior statements. *See State v. Tompkins*, ___ N.W.2d ___, 2015 WL 630203, at *13 (Iowa 2015) ("Notwithstanding this obligation, the general rule is that 'when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.'" (quoting *Crawford v. Washington*, 541 U.S. 36, 59 n. 9 (2004)).

We next address the hearsay argument. As a general rule, the district court does not have the discretion to admit hearsay in the absence of an exception to the general rule prohibiting admission of the same. *See State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006). The parties agree the challenged statements are hearsay. The fighting issue is whether the statements are admissible under the "excited utterance" exception to the general rule.

> Under Iowa Rule of Evidence 803(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is an exception to the hearsay rule. Obviously, an excited utterance must be made under the influence of the excitement of the incident rather than upon reflection or deliberation. *See State v. Shortridge*, 589 N.W.2d 76, 82 (Iowa Ct. App.1998).
> The application of the exclusion lies largely within the discretion of the trial court, which should consider (1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject

matter of the statement. *State v. Mateer*, 383 N.W.2d 533, 535 (Iowa 1986).

*State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999).

The *Atwood* factors all militate in favor of concluding C.H.'s statements in the 911 recording and the body-microphone recording were excited utterances and properly admitted. C.H. made the statements to the 911 operator immediately after the wrongful touching and while under the stress of the event. She hid in the downstairs bathroom to avoid her father to make the call. C.H. cried and whispered during the call. She stated to the operator that she was "really scared." When the police arrived at the home, C.H. ran out of the house to the arriving officers, crying. C.H.'s statements to the officer occurred only six to fifteen minutes after the wrongful touching. She cried while speaking to the officer and was hard to understand. On one occasion, she could hardly catch her breath because of her crying. When the officer came back to the car seven minutes later after speaking to Hicks, C.H. was still crying and upset. She was only eleven years old at the time. Her statements were not elicited by leading questions.

Given the preceding facts, we conclude the district court did not err in admitting the challenged statements. *See*, *e.g.*, *State v. Wright*, No. 13-1992, 2015 WL 568520, at *2 (Iowa Ct. App. Feb. 11, 2015) (holding statements in 911 call following domestic abuse incident were excited utterances); *State v. Moore*, No. 10-1283, 2012 WL 3194116, at *3 (Iowa Ct. App. Aug. 8, 2012) (holding statements to 911 operator and responding officer were admissible as excited utterances where only a short time elapsed between event and statements and

the declarant was "crying, upset" and the statements did not "appear to be the result of further contemplation"); *State v. White*, No. 09-1631, 2010 WL 3503450, at * 2 (Iowa Ct. App. Sep. 9, 2010) (holding statements made during 911 call after assault where victim was crying and upset were excited utterances).

IV.

Hicks challenges the district court's order pursuant to Iowa Code section 915.38(1), allowing C.H. to testify by closed-circuit television outside Hicks's presence. Section 915.38(1) allows the court to "protect a minor . . . from trauma caused by testifying in the physical presence of the defendant where it would impair the minor's ability to communicate." *Id.* The statute requires "a specific finding by the court that such measures are necessary to protect the minor from trauma." *Id.* We review the district court's order for errors at law. *See State v. Rupe*, 534 N.W.2d 442, 444 (Iowa 1995).

The State moved to have C.H. testify outside Hicks's physical presence in the belief that his presence would further traumatize her. In support of its motion, the State offered the testimony of several witnesses, including Dorothy Lifka, a clinical social worker who treated C.H. She testified C.H. is immature for her age. She testified C.H. would be traumatized by facing Hicks in court and that such an event could cause C.H. to regress in therapy. Lifka also testified that she "would expect very impaired communication skills" from C.H. if Hicks were present while she testified. Based primarily on Lifka's testimony, the court concluded the State had "met its burden to support a finding pursuant to section 915.38 . . . that [C.H.] would suffer trauma specifically related to [Hicks's]

presence during her testimony and to such an extent that she would be unable to reasonably communicate in his presence if required to do so at trial."

Iowa Code section 915.38 sets forth a procedure that ensures the reliability of the evidence by subjecting it to rigorous adversarial testing that preserves the essence of effective confrontation. *See Maryland v. Craig*, 497 U.S. 836, 857 (1990) (ruling the Confrontation Clause does not prohibit this practice). In the instant case, the court followed the statutory procedures and made the requisite findings. Those findings are supported by substantial evidence. Our court repeatedly has rejected the same or similar challenge Hicks makes in this case. *See, e.g.*, *Rupe*, 534 N.W.2d at 444; *State v. Cuevas*, No. 08-1344, 2009 WL 3337606, at *9-10 (Iowa Ct. App. Oct. 7, 2009); *State v. Paulson*, No. 06-0141, 2007 WL 461323, at *5-6 (Iowa Ct. App. Feb. 14, 2007); *State v. Bailey*, No. 01-0955, 2002 WL 31308238, at *1-3 (Iowa Ct. App. Oct. 16, 2002); *State v. Mosley*, No. 00-0094, 2001 WL 293221, at *2-4 (Iowa Ct. App. March 28, 2001). Hicks acknowledges the contrary authority, but he does not distinguish his case or offer any other reason to deviate from these prior decisions. Accordingly, we hold the district court did not err in granting the State's motion to have C.H. testify outside Hicks's physical presence.

V.

Hicks raises two additional evidentiary issues. First, Hicks contends the district court abused its discretion in allowing evidence used to engender sympathy for the victim. The challenged testimony, admitted on redirect, related to the number of schools C.H. had attended since the incident, the number of

foster homes she had been in since the incident, and her inability to see her brother and family since the incident. Hicks argues the evidence is irrelevant, having no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Iowa R. Evid. 5.401; *State v. Neiderbach*, 837 N.W.2d 180, 202 (Iowa 2013). The State responds the evidence was necessary to rehabilitate the witness after cross-examination, where defense counsel pursued Hicks's theory of defense that C.H. fabricated the allegations against her father so she could live with her mother. The State argues the testimony "was necessary to establish that despite not living with her mother, and having to frequently move, C.H. stood by her initial allegation."

"Reply to new matter drawn out on cross-examination . . . is a matter of right, though its extent is subject to control in the judge's discretion." *State v. Fetters*, 202 N.W.2d 84, 92-93 (Iowa 1972). Here, on cross-examination, defense counsel vigorously pursued a line of questioning to establish C.H. made up the allegations so she could return to her mother's house, the "fun" house with fewer rules than her father's house. The State's redirect attempted to establish that C.H. stood by her allegations even though she had not been returned to her mother's house. The testimony was elicited to rehabilitate C.H. following cross-examination. It was of limited value. However, we cannot say the district court abused its discretion in admitting the evidence.

Hicks argues, even if the evidence were relevant, it is unfairly prejudicial. *See* Iowa R. Evid. 5.403. This claim is not preserved for appellate review

because Hicks failed to object to the testimony on that ground. Instead, he interposed only a relevancy objection. "[O]bjection in the trial court on the ground of relevancy is insufficient to preserve error on the ground of unfair prejudice." *State v. Sharpe*, 304 N.W.2d 220, 225 (Iowa 1981). "[A] defendant may not announce an objection at trial and on appeal rely on a different objection to challenge an adverse ruling." *State v. Mulvany*, 603 N.W.2d 630, 632 (Iowa Ct. App. 1999).

Hicks also contends the court erred in excluding the testimony of several witnesses he claims would have supported his theory of defense, which was that C.H. fabricated the incident so she would be removed from her dad's custody and returned to her mother. The district court granted the State's motion in limine to exclude the witnesses. We agree with the district court that the proffered witnesses did not have any information probative of the issues in this case. There was no evidence they had personal knowledge of any statements C.H. made regarding fabrication of the allegations against Hicks. What little probative value the evidence would have had, "would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, and would be a waste of time." *See* Iowa R. Evid. 5.403.

VI.

For the foregoing reasons, we affirm the defendant's convictions.

**AFFIRMED.**