# IN THE COURT OF APPEALS OF IOWA

No. 23-0032
Filed December 4, 2024

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**TONY EARL ARTERBERRY,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Polk County, Scott Rosenberg, Judge.

　　A defendant appeals his convictions for murder in the first degree, burglary in the first degree, and robbery in the first degree. **AFFIRMED.**

　　Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

　　Brenna Bird, Attorney General, and Kevin Cmelik, Special Counsel, for appellee.

　　Heard by Tabor, C.J., and Ahlers and Sandy, JJ.

**AHLERS, Judge.**

There is no question Rhonda Howard was murdered in her apartment. A jury determined that Tony Arterberry committed the murder.[1] On appeal, Arterberry challenges the sufficiency of the evidence supporting the jury's verdict as well as various evidentiary rulings he claims deprived him of a fair trial.

We begin our discussion with Arterberry's sufficiency-of-the-evidence challenge because success on that challenge would require us to remand for judgment of acquittal, making it unnecessary to address his remaining challenges. *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003).

I.      **Sufficiency of the Evidence**

"We review challenges to the sufficiency of the evidence for correction of errors at law." *State v. Veal*, 930 N.W.2d 319, 328 (Iowa 2019).[2] "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted). Although Arterberry

---

[1] In addition to first-degree murder, the jury also found Arterberry guilty of burglary in the first degree and robbery in the first degree based on the same events surrounding the murder.

[2] Arterberry contends the standard of review for challenges to the sufficiency of evidence should be de novo because the beyond-a-reasonable-doubt standard is constitutionally based. We reject this contention because the supreme court has clearly proclaimed the standard of review to be for correction of errors at law, *see State v. Slaughter*, 3 N.W.3d 540, 546 (Iowa 2024), and we are not permitted to ignore or overrule controlling precedent. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014).

raises challenges to some of the evidence admitted at his trial, we still consider the challenged evidence, regardless of whether we ultimately determine it to be admissible, in conducting our assessment of the sufficiency of the evidence. *See Dullard*, 668 N.W.2d at 597.

In challenging his convictions for murder in the first degree, burglary in the first degree, and robbery in the first degree, Arterberry does not contest the fact that someone did the acts necessary to support convictions for all three crimes. Rather, he contends the State failed to prove that he is the person that did those acts. So, our focus is on the evidence supporting the jury's conclusion that Arterberry is the person who committed the crimes.

Based on the evidence presented at trial, reasonable jurors could have found the following facts. Arterberry and Howard had been in an on-again-off-again romantic relationship for several months. On May 6, 2022, about four days before her murder, Arterberry kicked in the door to Howard's apartment, grabbed her hair, knocked her to the ground, and got on top of her. While this was happening, Arterberry threatened to come back and kill her. He attempted to take her phone, but she was able to throw it out of reach before he got up and left the apartment. Howard then called 911. When the police responded, she misspelled Arterberry's name when asked about her assailant but provided a physical description and a list of locations he frequented. The police left to continue searching for Arterberry but were unable to locate him.

About four days later, Howard was found murdered in her apartment. The exact time of the murder could not be established, but it occurred sometime in the late-evening hours of May 9 to early-morning hours of May 10. Surveillance video

evidence and testimony established that at 10:52 p.m. on May 9, Arterberry was wearing a black sweatshirt with a red logo, dark shorts, white tennis shoes, and a rain poncho. He obtained a ride from a stranger and was dropped off at a restaurant near Howard's apartment a short time later. At 11:01 p.m., Arterberry used an acquaintance's phone to call Howard. He was not seen again for several hours. At 2:27 a.m. on May 10, surveillance footage from a convenience store shows Arterberry wearing the same sweatshirt and shorts, but his footwear had changed to black ankle socks with gray foam clogs. He was no longer wearing the rain poncho and was carrying a backpack. At the same time Arterberry can be seen leaving the convenience store at 2:40 a.m., data from Howard's phone—a phone that was missing from her apartment—shows the phone beginning to move in the same location as Arterberry. Arterberry is then seen on two other cameras walking east, which correlated to the evidence of continued movement of Howard's phone. Arterberry was not seen again until 11:40 a.m., when he was captured on video boarding a bus in the same sweatshirt. However, he had changed from shorts to jeans, and his footwear had changed again, this time to black shoes.

A reasonable juror could conclude that Arterberry's change in footwear around the time of a bloody murder, Howard's phone being missing from her apartment, and the phone following the same path as Arterberry demonstrates that Arterberry was at the apartment, took the phone, and had reason to change his footwear.

Arterberry argues the evidence described above is insufficient to establish that he is the person who committed the crimes at issue. If this is all the evidence the State presented, Arterberry may be right. But there is more. Howard was

found dead at the bottom of her basement stairs as a result of blunt and sharp force injuries. She also had injuries to her hand indicative of defensive wounds. The whole apartment was ransacked, and Howard's car keys, phone, credit card, and jewelry were missing. Two cigarette butts, numerous dented canned goods, and a shower curtain rod were found near Howard's body. Testing of saliva from the cigarette butt closest to the body showed a match to Arterberry's DNA, while the one further away belonged to another individual. A latent fingerprint on the shower curtain rod found next to the body was a confirmed match to Arterberry. The medical examiner testified a linear injury on the victim's body could be consistent with her being struck by a shower curtain rod. Material scraped from under Howard's fingernails contained Arterberry's DNA. Outside the apartment, a sock with Arterberry's DNA was recovered. Additionally, when Arterberry was arrested, he asked to wash his hands. When he was told no, he began to wipe his hands and individually lick each finger multiple times.

Faced with this evidence, Arterberry points out that the State's case is based largely on circumstantial evidence. Yet, direct and circumstantial evidence are equally probative. *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022). So, Arterberry seeks to undermine the weight of various pieces of evidence introduced by the State and points to claimed oversights by law enforcement during this investigation. He contends his personal relationship with the victim explains his DNA under her fingernails and the fingerprints around the apartment, and he maintains that crucial pieces of evidence received no testing or analysis.

But all Arterberry's arguments are simply ways of asking us to weigh the evidence differently than the jury did. This is something we cannot do on a

sufficiency-of-the-evidence challenge, as it is ultimately the jury's responsibility to resolve conflicts in and weigh the evidence, not ours. *Id.* Based on our review of the evidence, a reasonable juror could conclude that Arterberry is the individual who committed the crimes. As his only challenge is to identity, there is substantial evidence supporting the jury's verdict finding Arterberry guilty of murder in the first degree, burglary in the first degree, and robbery in the first degree.

Having concluded there is sufficient evidence to support Arterberry's convictions, we turn to his evidentiary challenges.

## II.     Evidentiary Challenges

In reviewing Arterberry's appellate briefs, we have tried our best to identify the items of evidence he challenges on appeal. We have identified four such items. If Arterberry sought to challenge any other items of evidence, we deem him to have waived those challenges due to failure to properly identify them. *See* Iowa R. App. P. 6.903(2)(a)(8)(3). The four evidentiary issues we have identified are challenges to: (1) testimony about prior incidents and 911 calls by Howard related to Arterberry; (2) evidence about an outstanding warrant for Arterberry's arrest; (3) evidence about Howard's statements to law enforcement officers, family members, and a friend about the May 6 incident; and (4) the admission of the medical examiner's autopsy report and testimony.

We will address the issues in the above order, but, before doing so, we first address the applicable standards of review. "District court decisions on whether to admit or exclude evidence are typically reviewed for an abuse of discretion." *State v. Dessinger*, 958 N.W.2d 590, 597 (Iowa 2021). However, hearsay claims are reviewed for corrections of errors at law. *Id.* "The correction for errors at law

standard is applicable in determining whether evidence that would generally be prohibited as hearsay comes in under a hearsay exception." *Id.* Claims alleging a violation of the Confrontation Clause are reviewed de novo. *Id.* The district court's decision to deny a motion to suppress based on interpretation of a statute is reviewed for corrections of errors at law. *State v. Madison*, 785 N.W.2d 706, 707–08 (Iowa 2010). The district court's ruling will be affirmed if the law was applied correctly and substantial evidence supports the court's findings of fact. *State v. Davis*, 922 N.W.2d 326, 330 (Iowa 2019).

### A.      Prior Incidents and 911 Calls

Arterberry first challenges the admission of testimony from a law enforcement officer that Howard had contacted 911 on multiple occasions in the past about Arterberry and had provided different spellings for Arterberry's last name. He contends this evidence was hearsay and was improper evidence of prior bad acts.

We cannot address this issue because Arterberry did not preserve error. The district court made no definitive ruling on this topic in its order resolving pretrial motions in limine, so Arterberry had the obligation to object at trial. *See State v. Thoren*, 970 N.W.2d 611, 620–21 (Iowa 2022). When a question about this topic was posed to a law enforcement officer during the trial, Arterberry lodged no objection until the answer had been given. He then raised hearsay and prior-bad-acts objections, which the district court overruled. Arterberry made no request to strike the answer. By failing to move to strike the answer after his tardy objection, he failed to preserve error on this issue. *State v. Taylor*, 310 N.W.2d 174, 177 (Iowa 1981) (explaining an objection raised after testimony is in the record fails to

preserve error "unless a motion to strike is made, an application to place the objection before the answer is made, or an excuse is offered for the delay in objecting to the evidence"); *see also State v. Howland*, No. 22-0519, 2023 WL 3613259, at *7 (Iowa Ct. App. May 24, 2023).

### B.    Outstanding Warrant

Arterberry also contends the district court erred by allowing testimony that he had an outstanding warrant in Michigan when the police arrested him.   He contends this is improper bad-acts evidence in violation of Iowa Rule of Evidence 5.404(b).  The State does not challenge error preservation on this issue.

Under Iowa Rule of Evidence 5.404(b),[3] evidence of other crimes, wrongs, or acts is admissible under certain circumstances:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . .  [However, T]his evidence may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

In ruling on pretrial motions in limine, the district court prohibited the State from talking about Arterberry's criminal history, including the outstanding arrest warrant from Michigan.  However, during Arterberry's opening statement, Arterberry began developing the theme that law enforcement had tunnel vision that led them to immediately take Arterberry into custody only two hours after discovering the murder.  Based on these statements, the State asked the court to revisit its ruling on the motion in limine to allow the State to introduce evidence about the Michigan

---

[3] Trial occurred in 2022, so we refer to the version of rule 5.404 in effect at that time.  An updated version of rule 5.404 became effective on January 1, 2023.

arrest warrant. The State pointed out that, due to that warrant, officers were required to arrest Arterberry, and the State should be allowed to introduce that evidence to counteract Arterberry's suggestion that his immediate arrest was a rush to judgment. The court granted the State's request, and evidence of the Michigan warrant was admitted.

As previously mentioned, Arterberry does not challenge that someone committed murder, burglary, and robbery. He only challenges the evidence establishing that he is that someone, so the fighting issue in this case is the identity of the perpetrator. When the perpetrator's identity is contested, bad-acts evidence may be relevant to prove identity. *State v. Putman*, 848 N.W.2d 1, 11 (Iowa 2014). To determine whether bad-acts evidence is admissible for the non-propensity purpose of establishing identity, the court first determines whether the evidence is relevant to a disputed factual issue. *Id.* at 8. Also, there "must be clear proof the individual against whom the evidence is offered committed the bad act or crime." *Id.* (citation omitted). If the evidence is relevant and there is clear proof, "the court must determine whether the evidence's 'probative value is substantially outweighed by the danger of unfair prejudice to the defendant.'" *Id.* (citation omitted).

The State introduced evidence regarding the warrant to prove Arterberry's identity and to give a reason behind his immediate arrest. The officer testified that the arrest warrant was used to obtain a photograph and name that were ultimately used to identify Arterberry at the time of his arrest. No other details pertaining to the warrant were discussed. The evidence was relevant, and there was clear proof of the warrant. While Arterberry may have suffered minimal prejudice, we find no

abuse of discretion in the court's determination that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to Arterberry, so we find no error in the admission of this evidence.

### C.	Howard's Statements about the May 6 Incident

The district court permitted evidence in the form of testimony and body-camera video that, when officers arrived at Howard's home in response to her 911 call on May 6, Howard reported a variety of details about Arterberry kicking in her door, Arterberry assaulting her, prior problems with him, and the fact Howard had called several times in the past about him. The district court also permitted evidence in the form of testimony from Howard's family members and a friend about statements she made to them about the May 6 incident before her murder.

Arterberry reprises the arguments made to the district court that all the described evidence was inadmissible hearsay and that admission of the statements made to law enforcement officers violated his right to confront witnesses. As to the hearsay issue, the court found the statements admissible under the excited-utterance exception. As to the Confrontation Clause objection, the court found the statements nontestimonial.

### 1.	Hearsay and the Excited Utterance Exception

Hearsay is a statement "(1) [t]he declarant does not make while testifying at the current trial or hearing; and (2) [a] party offers into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c). In general, hearsay is inadmissible unless it falls within an exception to the hearsay rule. Iowa R. Evid. 5.802. One of the recognized exceptions is an excited utterance. An excited utterance is "[a] statement relating to a startling event or condition, made

while the declarant was under the stress of excitement that it caused." Iowa R. Evid. 5.803(2).

In determining whether a statement qualifies as an excited utterance, the court considers:

> (1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement.

*State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999). The rationale for the exception is that a statement made under the stress of the event is more likely to be truthful than if the statement was made after reflection. *Dessinger*, 958 N.W.2d at 601.

Five people testified about statements Howard made about the May 6 incident—a police officer, three of Howard's adult children, and Howard's friend.

As to the police officer's testimony, both the officer's body-camera video and her testimony establish that Howard was upset and under the excitement of the event that had just occurred moments before. The district court's finding that the foundational facts supporting application of the excited-utterance exception existed is supported by substantial evidence, so there was no error committed in allowing the evidence from the officer. *See State v. Long*, 628 N.W.2d 440, 447 (Iowa 2001) (explaining that when a fact finding is made to determine that a hearsay exception applies, the finding is upheld if supported by substantial evidence).

The other four witnesses talked to Howard on May 6 or the day after. Two talked to her in person, one talked to her on the phone, and one talked to her by video call. Three of those four witnesses—two of Howard's children and her

friend—testified that Howard was emotional, was not herself, was stressed out, had swollen eyes from crying,[4] and/or showed signs of fear of Arterberry. The fourth witness—Howard's youngest child—did not observe such signs of stress.

As to the three witnesses who observed the signs of distress as Howard told them about the events of May 6, substantial evidence supports the district court's determination that the statements were admissible under the excited-utterance exception. We are not persuaded by Arterberry's contention that the statements to these three witnesses were not excited utterances because they occurred hours or a day after the event. The evidence clearly established that Howard was still under the stress of the May 6 break-in and assault when she made the statements about that event. This is not surprising given the traumatic and violent nature of it. The excited-utterance exception was properly applied, so there was no error in admitting the testimony of these three witnesses. *See State v. Sallis*, No. 17-0301, 2017 WL 6040002, at *2 (Iowa Ct. App. Dec. 6, 2017) ("Our cases have held that statements made several hours or even days after the startling event or condition can qualify as excited utterances so long as the declarant was under the stress of excitement that the startling event or condition caused.").

As mentioned, Howard's youngest child did not observe Howard to be in an excited state when Howard made statements describing the events of May 6. As a result, this witness's testimony should not have been admitted under the excited-utterance exception. However, given that this witness's testimony was cumulative

---

[4] One witness testified that Howard broke down crying during the conversation.

to the evidence from the police officer, the testimony of two of Howard's other children, and the testimony of Howard's friend, any error in admitting the testimony of Howard's youngest child was harmless. *See State v. Elliott*, 806 N.W.2d 660, 669 (Iowa 2011) (noting that the presumption of harm by wrongful admission of evidence can be overcome when the evidence is cumulative, absent circumstances where the "extra helping of evidence" was necessary to establish credibility).

### 2. Confrontation Clause

Arterberry contends that, even if the statements made by the victim to the law enforcement officer were properly admitted as excited utterances, admission of those statements violated his right to confront the witness under the Sixth Amendment of the United States Constitution and article 1, section 10 of the Iowa Constitution. The Confrontation Clause allows the admission of out-of-court testimonial statements only if the declarant is unavailable to testify and the defendant had a prior chance to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 53–5468 (2004). Statements made from police interrogation may be testimonial or nontestimonial depending on the circumstances.

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822 (2006). To be admissible, the statements generally must be nontestimonial. *Id.* at 821.

As previously noted, Howard called 911 on May 6 to report that her door had been kicked in by her ex-boyfriend who assaulted her, threatened to come back and kill her, and then left before police arrived. When the police responded, Howard was in her apartment and was visibly upset. When asked what happened, she began describing the assault. She repeatedly stated, "he is coming back." The officers asked follow-up questions to gain an idea of what Arterberry looked like and where they may find him. Howard cried throughout the conversation and expressed fear of his return numerous times. As the perpetrator was still at large after threatening to return and kill Howard, the circumstances indicated an ongoing emergency that required the officers to continue searching for Arterberry, making Howard's statements to police nontestimonial. *See Davis*, 547 U.S. at 822. The conclusion that an ongoing emergency existed is supported by the fact that, after officers left the interview with Howard, they patrolled the area near her apartment and searched locations frequented by Arterberry in their effort to find him.

After our de novo review of the evidence, we agree with the district court that the statements made during the initial police response were nontestimonial. As such, their admission did not violate Arterberry's federal or state Confrontation Clause rights.

### D.      Admission of Autopsy Report

Iowa Code section 331.802(5)(a) (2022) requires a person conducting an autopsy to promptly file a complete record to specified parties, including the county attorney. An administrative rule expands upon this requirement:

> A complete record of the findings of the autopsy shall be submitted to the state medical examiner's office, the county attorney of the county where the death occurred and the county attorney of the county where the injury contributing to or causing the death was sustained within 90 days following the date of death, *unless unusual circumstances requiring further investigation or testing exist.* The report filed shall include all diagrams, transcriptions of the autopsy observations and opinions, and toxicology reports.

Iowa Admin. Code r. 641–127.3(5) (emphasis added).

It is undisputed that the medical examiner conducting the autopsy did not complete and submit the autopsy report until August 17—ninety-nine days after the date of death and nine days past the ninety-day deadline imposed by the administrative rule. Arterberry filed a motion seeking to suppress admission of the autopsy report and the medical examiner's testimony because of the late submission. The district court denied the motion. It found the need for further investigation or testing justified the delay.

On appeal, Arterberry contends that the late submission of the autopsy report is not subject to the "further investigation or testing" exception stated in the administrative rule because the medical examiner had access to the test results needed to complete the report by late July. We find Arterberry's interpretation of the rule to be too narrow. Though the medical examiner received the needed test results in late July, he testified that he needed time to review the results, interpret them, reach a conclusion, and incorporate the conclusions into a report. Further, the medical examiner testified that each homicide is unique and may require additional analysis when the test results indicate something relatively uncommon, as they did in this case.

Arterberry suggests the delay was a result of neglect rather than diligence on the medical examiner's behalf, but the district court found otherwise when it determined the need for further investigation or testing necessitated the delay. We conclude the district court correctly interpreted Iowa Code section 331.802(5)(a) and administrative rule 641–127.3(5). We further conclude there is substantial evidence supporting the district court's finding that the delay fell within the exceptions of the time requirement set by the rule. Accordingly, we find no error in the court's decision to deny Arterberry's suppression motion. *Davis*, 922 N.W.2d at 330 (requiring affirmance when the district court correctly applies the law and substantial evidence supports the court's factual findings). As we find no violation of the statute or rule, we need not and do not address whether the remedy for a violation would be exclusion of the report or testimony about its contents. As Arterberry's constitutional challenges to the district court's denial of his motion are premised on violations of the statute or rule—a violation that we find did not occur—we do not address them either.

## III.    Conclusion

In conclusion, there was sufficient evidence to support the jury's verdict finding Arterberry guilty of all three charges. We reject Arterberry's evidentiary challenges for the reasons stated in this opinion. Accordingly, we affirm Arterberry's convictions for all three crimes.

**AFFIRMED.**