# IN THE COURT OF APPEALS OF IOWA

No. 24-1968
Filed January 7, 2026

**State of Iowa,**
Plaintiff–Appellee,

v.

**Jessy Ryan DeMoss,**
Defendant–Appellant.

Appeal from the Iowa District Court for Palo Alto County,
The Honorable Shayne Mayer, Judge.

**AFFIRMED**

Martha J. Lucey, State Appellate Defender, and Allison Linafelter, Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, attorneys for appellee.

Considered without oral argument
by Chicchelly, P.J., and Buller and Langholz, JJ.
Opinion by Chicchelly, P.J.

**CHICCHELLY, Presiding Judge.**

Jessy DeMoss appeals his convictions for three counts of second-degree sexual abuse and one count of lascivious acts with a child. He argues the district court erred when it admitted one of the victim's statements to a sexual abuse nurse examiner identifying him. Upon our review, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

DeMoss had one daughter, C.D., and was a father figure to another girl, M.M., whose mother he had dated. Every other weekend, he had visitation with C.D. at his home. During these visits, he began to sexually abuse her. C.D. recalled this continued regularly until she turned eleven years old.

After the final time DeMoss abused her, C.D.'s vagina began to bleed. C.D.'s behavior and obvious discomfort raised a red flag for her mother who asked C.D. what was wrong. At that point, C.D. told her mother about DeMoss's abuse. Her mother informed the Iowa Department of Human Services who then involved law enforcement. C.D. had a forensic interview and a sexual abuse examination by a sexual abuse nurse examiner (SANE). During this examination, C.D. disclosed what happened to her and identified DeMoss as the perpetrator.

M.M. had a similar experience with DeMoss. He began touching M.M. both over and under her clothes and engaging in inappropriate sexual behaviors. These instances included DeMoss wrestling with M.M., removing her pants, and touching her vagina; and "pressing his penis up against [her] butt." DeMoss's other behavior included pulling up M.M.'s shirt exposing her chest and asking M.M. for a mirror picture of her full body. When DeMoss sensed M.M. getting uncomfortable, he told her not to tell

2

her mother. Eventually M.M. told her teacher what was happening, and the teacher alerted the authorities.

As a result, the State charged DeMoss with two counts of second-degree sexual abuse of C.D. in violation of Iowa Code section 709.3(1)(b) (2014), one count of second-degree sexual abuse of M.M., and one count of lascivious acts with a child in violation of Iowa Code section 709.8(2)(a). The case proceeded to trial. Both C.D. and M.M. testified at trial. The jury also heard testimony from the SANE who described the sexual assault examination and testified to C.D.'s identification of DeMoss. DeMoss objected to the identification at trial, and the district court admitted the identification as a statement made for purposes of medical diagnosis under Iowa Rule of Evidence 5.803(4). The jury ultimately convicted DeMoss as charged. DeMoss now appeals.

## STANDARD OF REVIEW

Our review of evidentiary rulings on hearsay is for the correction of legal error. *State v. Walker*, 935 N.W.2d 874, 878 (Iowa 2019). "Although we normally review evidence-admission decisions by the district court for an abuse of discretion, we review hearsay claims for correction of errors at law." *State v. Smith*, 876 N.W.2d 180, 184 (Iowa 2016). While reviewing the district court's decision for legal error, the court "give[s] deference to the district court's factual findings." *State v. Long*, 628 N.W.2d 440, 447 (Iowa 2001).

## DISCUSSION

DeMoss argues the district court erred when it admitted C.D.'s identification statements to the SANE under the medical treatment hearsay exception. He argues the State failed to lay the proper foundation for the statements to be admitted. The SANE testified "I had asked [C.D.] if

something happened to her body, and she said yes. So she talked about her dad touching her bad spot, which to her her bad spot she pointed to her front genital area. She identified his bad spot touching her bad spot on skin." The district court admitted the statement under the exception for medical diagnosis or treatment. Iowa R. Evid. 5.803(4). A statement falls within this exception if:

> (A) Is made for—and is reasonably pertinent to—medical diagnosis or treatment; and
>
> (B) Describes medical history, past or present symptoms or sensations, or the inception or general cause of symptoms or sensations.

*Id*. The State has the burden to establish the testimony comes within the exception to the rule against hearsay. *See Smith*, 876 N.W.2d at 189.

In *State v. Tracy*, our supreme court held that a child victim's identification of the perpetrator during treatment would fall within the exception when (1) "the declarant's motive in making the statement [was] consistent with the purposes of promoting treatment" and (2) was of the type "reasonably relied on by a physician in treatment or diagnosis." 482 N.W.2d 675, 681 (Iowa 1992) (en banc) (citation omitted).

First, we must identify whether C.D.'s motive was to promote medical treatment. *See id*. We conclude there was sufficient evidence to show C.D.'s motive was medical treatment. The statement was made during the medical history portion of the examination and was outside the presence of her mother. The question the SANE asked was not intended to elicit DeMoss's name. The SANE testified that they asked C.D. "if something happened to her body." C.D.'s identification came in response. Based on that, we conclude C.D.'s motive was to seek medical treatment.

4

Second, we must determine whether the identification is the type of statement medical professionals reasonably rely on. The SANE testified about their examination of C.D. She described the purpose of the examination is to assess the medical needs of the child including needing the identity of the perpetrator to assess the "safety risk of the child." The nurse described why identity was a necessary part of the examination by stating:

> We want to know who the person is, who the alleged offender is, and what is the contact going to be or what has it been like. For example, she talked about a step-mom, I believe, that she still has visitation with or sees on occasion, but that was not the person that was actually with her dad at that time. So we really don't always know what that looks like. So we do ask who the offender is for the safety. And as well we will talk to parents or like the mom in this situation about concerns for infections by—if it's someone she was married to or a boyfriend or something like that, to find out if they were concerned of sexually-transmitted infections and things like that. That then would—we would want to have mom take her child to their family practice doctor, their primary physician and maybe have more lab work, HIV, hepatitis, and things like that based on a history.

This testimony is consistent with Iowa law. *See Walker*, 935 N.W.2d at 879 ("In cases of child sexual abuse, ascertaining the identity of the abuser is important for medical purposes because the child's age prevents her from implementing self-care and because parents are often ill-equipped to elicit the abuser's identity."). Therefore, we find the State laid sufficient foundation to satisfy both prongs of *Tracy* and the district court did not err in admitting the statement.

5

## CONCLUSION

Because there was proper foundation to admit the victim's identification of DeMoss as a statement of medical diagnosis, we find the district court did not err and affirm DeMoss's convictions.

**AFFIRMED.**