**STATE of Iowa, Appellant,**

v.

**Wesley Clyde CAGLEY, Appellee.**

No. 00–0927.

Supreme Court of Iowa.

Dec. 19, 2001.

As Revised on Denial of Rehearing Jan. 9, 2002.

Thomas J. Miller, Attorney General, Cristen C. Odell and Laura Roan, Assistant Attorneys General, and Marilyn Dettmer, County Attorney, for appellant.

Linda Del Gallo, State Appellate Defender, and Shellie L. Knipfer, Assistant State Appellate Defender, for appellee.

LARSON, Justice.

We granted the State's application for discretionary review challenging the district court's order refusing to admit hearsay evidence under the excited-utterance and residual-hearsay exceptions. We conclude the State has failed to carry its burden of establishing a factual basis for the application of the exceptions and therefore affirm and remand for further proceedings.

This case arises out of domestic-abuse assault and sexual-abuse charges against the defendant, Wesley Cagley. It involves an alleged confrontation between the defendant and his wife, Karla Cagley, who now contends she was not in fact a victim of sexual abuse. The specific issue is whether the victim's statements the night of the arrest, which she has now recanted in part, are admissible. Cagley says they

are not admissible because they are hearsay. The State contends they are admissible based on the excited-utterance and residual-hearsay exceptions.

The defendant's son reported he had heard the defendant threaten his mother with a gun. Based on this report, Charles City police officers arrived at the Cagley home about 1:50 a.m., less than an hour after the alleged abuse. Karla answered the door for officer Shiloh Mork, who testified she "appeared shook[ ] up. She appeared that she had been crying. She had puffiness around her eyes." Karla detailed to another officer, James Gray, how the defendant forced her to perform sex acts and threatened her with a rifle. Gray testified that Karla seemed "quite badly shaken and disturbed, concerned . . . about what had taken place." Gray also testified

> [s]he was, again, quite disturbed by the role that the weapon had played and the fact that Mr. Cagley advised her they would both be dead by morning.
>
> . . . .
>
> She appeared like she was trying to keep herself composed or trying to keep her wits about her throughout the whole thing but yet nervous and shaken.
>
> . . . .
>
> She appeared like she was trying to regain her composure but she seemed fidgety, you know, shaken.

Lieutenant Brad Gibson arrived at the scene six to seven minutes after the first officers. Karla repeated to him what she had told officer Gray. Lieutenant Gibson taped at least a portion of his conversation with Karla, and this tape was considered by the court in ruling on the defendant's motion to exclude the evidence. Lieutenant Gibson testified that Karla was "traumatized. She was trying to regain her composure. Really upset and scared." All of the officers testified Karla was not crying at the time they saw her, and she later explained her red puffy eyes as being partly the result of the events in question but also caused in part by her anger and frustration at the defendant over other issues.

The defendant initially denied both the assault with the rifle and the forced sex acts. Later, he admitted he was angry with the victim and had used the rifle to "intimidate" her. Police found physical evidence in the couple's bedroom consistent with Karla's statements, including several guns, ammunition, and sexual devices allegedly used in the assault.

The defendant was arrested for aggravated domestic-abuse assault and taken to jail. As he was led from the house in handcuffs, he made threats to kill Karla and their son. The court entered a no-contact order at the defendant's initial appearance. However, after the defendant bonded out of jail, he disregarded the no-contact order and moved back into the family home, apparently without protest by Karla.

On January 18, 2000, Karla filed a motion to dismiss the criminal charges against Cagley and to lift the no-contact order. She stated in her motion that "she has no fear of Defendant in this matter." She also testified on defendant's behalf at the hearing on his motion in limine. She recanted her previous statements and denied that the defendant forced her to perform sex acts. Rather, she testified they had engaged in consensual sex and that she had initially lied to the police to assure the defendant would be removed from the home. She stated that, in the past when she had called officers, they would not remove Cagley from the home, so she added the allegation of sexual assault to assure his removal. She stated she had been rational and able to think and reflect about what she was doing at the time she was

discussing the matter with the officers. She stated that she was not shocked when the defendant threatened to kill them both because "he was upset" and "he's threatened to kill himself before."

Following a hearing, the trial court granted the defendant's motion in limine and excluded the statements in question. The court focused on Karla's demeanor in its ruling and noted that, while the police had uniformly described her as "shaken up, disturbed, and shaken," she did not cry. The court found the victim's emotional state "seemed somewhat inconsistent with what one would expect from the victim of sexual assault." The court relied heavily on the fact that Karla recanted her initial statements of forced sex and stated it was "unable to conclude with sufficient certainty that the statements were spontaneous and not the product of reflection or fabrication." The court also ruled that Karla's statements were inadmissible under the residual-hearsay exception, finding that there was no circumstantial guarantee of trustworthiness of the statements as to sexual abuse. The court noted that, while there was evidence of sexual activity, there was virtually no supporting evidence any of it was forced.

■ The State, as proponent of the hearsay evidence, has the burden of proving it falls within an exception to the hearsay rule. *State v. Long*, 628 N.W.2d 440, 443 (Iowa 2001).

Under Rule of Evidence 803(2), "[a] statement relating to a startling event or condition made while the defendant was under the stress of excitement caused by the event or condition" is an exception to the hearsay rule. Obviously, an excited utterance must be made under the influence of the excitement of the incident rather than upon reflection or deliberation.

... [T]he trial court [in ruling on the applicability of this exception to a particular statement], ... should consider (1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement.

*State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999).

■ Frequently, we have characterized these decisions as being reviewable for abuse of discretion, but we have recently stated that our standard of review is more accurately characterized as giving "deference" to the district court's factual findings. *Long*, 628 N.W.2d at 445, 447. We will uphold these findings of fact if supported by substantial evidence. *Id.* at 447.

■ The district court's ruling compared the evidence presented to it with the elements we identified in *Atwood* necessary to establish an excited-utterance exception. The court ruled the lapse of time between the statement and the event was not so great as to necessarily fail the test for an excited utterance, but noted it was long enough to permit fabrication of a story. The court also found that many of the statements were in response to questions by the officers and that the declarant was of sufficient age as to lack the natural spontaneity of statements attributed to certain declarants such as children. As to the condition of the declarant, the court noted that it had listened to the tape-recorded interview of Karla and concluded she was not hysterical or even "highly emotional." The court observed that none of the officers' written reports noted any unusual emotional condition that would support an excited-utterance finding. The court concluded:

The record does not convince the court that the victim's statements fall within the *excited utterance* exception. The court has considered all five <u>Atwood</u> factors and is unable to conclude with sufficient certainty that the statements were spontaneous and not the product of reflection or fabrication. Accordingly, the defendant's Motion in Limine must be sustained.

Substantial evidence supports this conclusion.

■ There is also substantial evidence to support the court's ruling on the residual-hearsay exception. While there was some circumstantial evidence supporting the trustworthiness of Karla's statements regarding forced sex, such as defendant's admitted threats of physical violence, the presence of the guns in the bedroom, and defendant's disregard of the no-contact order, we look to see whether substantial evidence supports the district court's decision. The district court's findings, that Karla was not inherently trustworthy because of her age and because she had sufficient time to fabricate her allegations, apply with equal force here. Karla recanted, under oath, the statements at issue, and she testified as to her motivation for doing so. We affirm the ruling of the district court and remand for further proceedings.

**AFFIRMED AND REMANDED.**