**IN THE COURT OF APPEALS OF IOWA**

No. 15-0133
Filed March 23, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOHN WILLIAM NESS,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Woodbury County, John C. Nelson, District Associate Judge.

    A defendant appeals from his convictions and sentences for operating while intoxicated, second offense, and assault. **AFFIRMED.**

    John P. Beauvais Jr. of Deck Law, L.L.P., Sioux City, for appellant.

    Thomas J. Miller, Attorney General, and Kevin R. Cmelik and Linda J. Hines, Assistant Attorneys General, for appellee.

    Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, Judge.**

John Ness appeals from his convictions and sentences for assault and operating while intoxicated, second offense. Ness maintains the district court should have granted his motion to suppress because an officer entered his home and arrested him without a warrant and without an applicable exception to the warrant requirement. Ness also maintains the district court should not have allowed a witness's deposition to be read into evidence because the State had not proven she was "unavailable."

**I. Background Facts and Proceedings**

On April 3, 2014, at 7:29 p.m., an employee from the Tobacco Hut called local police and reported that approximately three minutes earlier, a patron had attempted to purchase alcohol at their drive-through and had hit the building. The employees refused to sell the man alcohol and he drove away. As he did so, the man had "peeled out" of the driveway. The reporting employee was concerned because she believed the man was intoxicated. She described the man's vehicle as well as the license plate number, and an officer was dispatched to the scene.

At 7:33 p.m., a second witness—one of Ness's neighbors—called the police and described the same vehicle and license plate. The second caller reported the driver had almost hit the caller's car and had driven "over top the curbs." The witness described the driver as out of control. A few minutes later, the same witness made a second call to report that the driver was threatening a neighbor.

Another of Ness's neighbors called at 7:41 p.m. and reported the driver was "threatening to blow up houses on the block, [and] kill everybody." Also, the driver had "almost hit two guys with his vehicle" and had told a neighbor he would run over the neighbor's daughter if she was outside. The witness reported the man had parked his vehicle in his driveway and had just gone into his home; she believed he was drunk because he was "staggering around."

Officer Shoumaker was dispatched to the Tobacco Hut at 7:30 p.m. following the initial call. He received a second call from dispatch at 7:42 p.m., which directed him to the area of the later complaints and Ness's home. He estimated he arrived at Ness's home within a few minutes of the second dispatch. Shoumaker knocked on Ness's front door, and the door opened approximately six inches. Ness approached the door and spoke with the officer, but he refused to step outside. According to the officer's testimony, he believed Ness was a safety risk and, as such, felt the need to keep his eyes on him. For that reason, Shoumaker placed his foot in the doorway to keep the door ajar. When Ness then attempted to shut or slam the door, it made contact with Shoumaker's shoulder and arm, which broke the window in the door. Officer Shoumaker then entered Ness' home and arrested him. Other police officers soon arrived to assist Shoumaker, and Ness was transported to the alcohol safety and protection office, where he refused to perform field sobriety tests or submit to a breath test.

On April 15, 2014, Ness was charged by trial information with operating while intoxicated, second offense, and assault on a peace officer.

Ness filed a motion to suppress, asserting the police had illegally entered his home and arrested him without a warrant. The State resisted the motion, arguing there were two applicable exceptions to the warrant requirement: exigent circumstances and community caretaking. A hearing was held on the matter on March 6, 2014. At the hearing, Officer Shoumaker testified he put his foot in the door jamb of Ness's front door because "[b]ased on [Ness's] behavior, I could tell he was intoxicated and he had threatened the public. For my safety and the public, I was not getting out of his house." Additionally, he testified:

> I didn't want that door to be closed for my safety and the public safety. Based on the information I had going into this call where he's threatening to blow people up or blow houses up, run kids over, I don't know what he has in his house. I don't want to give him the opportunity to go back into his house to grab whatever explosive device he may have had to blow up houses.

The court determined that both exigent circumstances and community caretaking exception applied, making a warrant unnecessary. Ness's motion to suppress was denied.

The matter proceeded to jury trial on December 16–17, 2014. At the start of trial, the State asked the court to declare the employee from the Tobacco Hut as unavailable to testify so her deposition could be read into evidence. The State maintained this was necessary because the employee was suffering from mental health ailments and other medical concerns that required her to take medication tjat affected her memory and ability to speak. Ness resisted the State's request. The court found the employee was unavailable to testify, and the deposition was read into evidence.

Following the trial, the jury found Ness guilty of driving while intoxicated and simple assault. Ness admitted to his prior conviction for driving while intoxicated. He was sentenced to 365 days in county jail with all but sixty days suspended for driving while intoxicated, second offense. He was sentenced to ten days in county jail for the assault conviction, with the sentences running concurrently.

Ness appeals.

## II. Standard of Review

Ness maintains the district court should have granted his motion to suppress based on constitutional reasons; therefore our review is de novo. *See State v. Freeman*, 705 N.W.2d 293, 297 (Iowa 2005). We make an independent evaluation of the totality of the circumstances as shown by the record. *Id.* The record includes evidence introduced at both the suppression hearing and at trial. *State v. Vance*, 790 N.W.2d 775, 780 (Iowa 2010). "We give deference to the district court's findings of fact due to its ability to assess the credibility of witnesses," but we are not bound by these findings. *Id.*

We review hearsay claims for correction of errors at law. *State v. Paredes*, 775 N.W.2d 554, 560 (Iowa 2009). "This standard of review extends to determining whether statements come within an exception to the general prohibition on hearsay evidence." *Id.*

## III. Discussion

### A. Motion to Suppress

Ness maintains the court should have granted his motion to suppress because the officer entered his home and arrested him without a warrant and

without an applicable exception to the warrant requirement. The Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution protect individuals from unreasonable searches and seizures. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. District Court*, 407 U.S. 297, 313 (1972). "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (citation omitted). The State "bear[s] a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984).

Here, Officer Shoumaker entered Ness's home and arrested him without a warrant. As it did at the suppression hearing, the State maintains that the exigent-circumstances exception and the community-caretaking exception apply to these facts to make a warrant unnecessary.

A recognized exception exists for exigent circumstances. *See State v. Kern*, 831 N.W.2d 149, 174 (Iowa 2013). An exigent circumstance is one that requires immediate aid or action. *Exigent*, Black's Law Dictionary (10th ed. 2014). This exception applies only "when coupled with existing probable cause." *Kern*, 831 N.W.2d at 174. Here, the State contends the officer had probable cause to believe Ness had driven his vehicle while intoxicated and exigent circumstances existed that justify the officer's warrantless entry and arrest of Ness—namely, "the danger posed by Ness to his neighbors" and to the officer and the "destruction or tampering with evidence of intoxication."

"Before agents of the government invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless entries into the home." *Welsh*, 466 U.S. at 750. "When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate." *Id.* Consideration of the gravity of the offense is an important part of the constitutional analysis. *Id.* at 753

Here, the dissipation of alcohol as possible evidence is not enough to justify the warrantless entry and arrest of Ness. There was no hot pursuit of Ness as he had reached his home and left his car some time before the officer arrived at the residence. As our supreme court explained in *State v. Lovig*:

> [W]e first observe that a defendant is permitted to refuse a chemical test. Thus, the claim of destruction of evidence in the context of blood alcohol content testing may be illusory. Additionally, unlike hot pursuit, the time lapse achieved by a suspect who successfully reaches the comforts of home without police in hot pursuit necessarily provides a suspect with two of the three means of destruction that would still exist even if a warrantless entry was made once police arrived. Furthermore, the natural dissipation of the blood alcohol level of a person is an aspect of most every OWI case, and cannot be properly assessed without some reference to the time frame in which a chemical test can be administered. Thus, the actual time to obtain a warrant becomes the important factor. If the time is relatively short, fear over too much dissipation will be alleviated. Furthermore, just as an expert can provide testimony at trial to explain the degree blood alcohol levels decline over time, the same expert can use any blood alcohol level finally obtained after the execution of a warrant to extrapolate back to arrive at a blood alcohol level earlier in time.

675 N.W.2d 557, 566–67 (Iowa 2004) (internal citations omitted). The court ultimately concluded that "[a]lthough the crime of OWI is a comparatively serious matter . . . [e]xigent circumstances do not exist merely because [the defendant's] 'blood alcohol level might have dissipated while the police obtained a warrant.'" *Id.* at 567 (citation omitted).

As in *Lovig*, Ness was in his home for at least some period of time before the officer arrived,[1] and we have no evidence that the officer sought a warrant or attempted to determine the amount of time it would take to get one. Additionally, we acknowledge Ness testified at trial that he drank a pint of spiced rum after he arrived home and before the officer arrived. However, there was no evidence that when Officer Shoumaker arrived, he believed Ness was engaged in a "purposeful activity within the [home] that would destroy the integrity of any future chemical tests" at the time he entered the home. *See id.* We are not convinced the destruction or possible tampering with evidence was an exigent circumstance that allowed warrantless entry into Ness's home.

We next consider whether the danger posed by Ness to his neighbors and the officer created an exigent circumstance for the warrantless entry and arrest. In *State v. Gregory*, our supreme court outlined six conditions as guidelines in determining the existence of exigent circumstances:

> 1. A grave offense is involved;
> 2. The suspect is reasonably believed to be armed;
> 3. There is probable cause to believe the suspect committed the crime;
> 4. There is strong likelihood of escape if not apprehended;

---

[1] We do not credit Ness's testimony that he arrived home from the liquor store at approximately 6:35 pm and was home for fifty minutes before the officer initially knocked on his front door.

5. There is strong reason to believe he is on the premises; and

6. The entry, though not consented to, is peaceable.

331 N.W.2d 140, 141 (Iowa 1983). In considering the criteria, "[n]o one of them is conclusive, and all need not be present." *Gregory*, 331 N.W.2d at 141. "Exigent circumstances usually are found to exist where there is a danger of violence and injury to the officers or others, a risk that the suspect may escape, or a probability that evidence will be concealed or destroyed if arrest was unduly delayed." *State v. Hardin*, 359 N.W.2d 185, 188 (Iowa 1984).

We consider the six factors as they apply to these facts and find that an exigent circumstance existed. We acknowledge that the record does not indicate there was any reason to believe Ness would have escaped if he was not immediately apprehended. He was in his own home and his car was parked where the officer could see and monitor it. Additionally, the officer's entry cannot be characterized as peaceable. Ness was angered by Officer Shoumaker using his body to block the door from shutting and, as a result, shut or slammed the door on the officer, causing the glass in the door to break.

However, we are more persuaded by the other factors. First, operating while intoxicated "is a relatively serious crime within the spectrum of prohibited acts in Iowa." *Lovig*, 675 N.W.2d at 565. Additionally, and most importantly, Officer Shoumaker reasonably believed Ness may have been armed and that there was a danger of violence and injury to the officers. No witnesses had reported seeing Ness with a weapon, but Ness had threatened to both "blow up" and shoot his neighbors. Next, Officer Shoumaker had probable cause to believe Ness had operated his vehicle while intoxicated. Multiple witnesses

called dispatch to report the erratic driving of the vehicle that ultimately parked at Ness's home. The employee from the Tobacco Hut told dispatch they had refused to sell Ness alcohol because he had hit the building and they believed he was drunk. One of the neighbors who called stated Ness had almost hit two of the neighbors with his vehicle, and she believed he was drunk because she saw him "staggering around" after he exited the vehicle. The officer also had a strong reason to believe Ness was on the premises. One of Ness's neighbors reported to dispatch as Ness entered his home—just a few minutes before the officer arrived. Additionally, after Officer Shoumaker knocked on Ness's front door and it opened, he was able to see Ness within the home.

Ness urges us to find otherwise, arguing the facts here are similar to the facts in *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984), where the Supreme Court concluded that no exigent circumstance supported the warrantless entry of police and the subsequent arrest of the defendant. In *Welsh*, the defendant drove erratically before ultimately swerving off the road, abandoning the vehicle, and walking home. 466 U.S. at 742. Officers were able to learn the driver's identity and address from the vehicle registration, and they went to the defendant's home. *Id.* Without a search or arrest warrant, the officers entered the defendant's home—finding him lying in bed—and arrested him. *Id.* at 743. The State argued the existence of three factors constituted exigent circumstances: hot pursuit of a suspect, the need to prevent physical harm to the defendant and the public, and the need to prevent destruction of evidence. *Id.* at 748. The Court first noted that the offense for which the officers entered the home was a "noncriminal, traffic offense." *Id.* at 753. The court was

unpersuaded by the State's hot pursuit argument "because there was no immediate or continuous pursuit of the [defendant] from the scene of the crime." *Id.* Additionally, the court found that "because the [defendant] had already arrived home, and had abandoned his car at the scene of the accident, there was little remaining threat to public safety." *Id.* Finally, the dissipation of alcohol in the defendant's blood alone was not compelling enough to justify the warrantless entry and arrest of the defendant. *Id.* at 754. The Court ultimately concluded the arrest of the defendant was "invalid." *Id.*

Like *Welsh*, there was no "hot pursuit" of Ness by the officer here, and we agree the loss of evidence is not a compelling argument. However, the present facts differ in important ways. First, in *Welsh*, the offense of driving while under the influence of an intoxicant was a noncriminal, traffic offense whereas in Iowa, it is a criminal offense which carries the possible penalty of one-year jail time. 466 U.S. at 753; *see also* Iowa Code § 321J.2(3)(a) (first offense is punishable by a period of imprisonment "not to exceed one year"). As our supreme court has stated, it is a "comparatively serious matter," and "[i]t is the type of crime that can support a warrantless entry into a home if probable cause and exigent circumstances are present." *Lovig*, 675 N.W.2d at 565. Additionally, in *Welsh* the court noted that the danger to the defendant and the community ended when the defendant abandoned his vehicle and entered his home. 466 U.S. at 753. Here, the officer reasonably believed Ness still posed a danger as he had made several threats of violence to his neighbors just before entering his home, and it was unclear if he planned to leave again and carry out his plans to harm other people. The officer made a minimal intrusion on Ness's house, arresting him just

inside the doorway and entering only insofar as to allow Ness, who was unsteady on his feet, to sit on a nearby couch.

To be clear, although both the State and the district court relied on Ness's slamming or shutting the door on the officer as part of the justification for the warrantless entry, we do not consider that action as part of the exigent circumstance we find here. "The Fourth Amendment has drawn a firm line at the entrance of the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton*, 445 U.S. at 590. "When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do." *Kentucky v. King*, 563 U.S. 452, 469 (2011). "[W]hether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has *no obligation* to open the door or to speak." *Id.* at 469–70 (emphasis added). "[E]ven if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time." *Id.* at 470. While the exigencies of the situation can make the need for law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment, a police-created exigency will negate the reasonableness of the warrantless entry. *See id.* at 460–61. Here, we do not consider Ness's action of shutting or slamming his front door on the officer's foot as part of the exigent circumstance that justified the officer's entry. It does demonstrate, however, Ness's belligerence and his combative attitude, which corroborated the officer's concern about violent behavior.

In considering the factors listed above, the threat of harm or violence to the neighbors created an exigent circumstance which, in addition to the probable cause to believe Ness had operated his vehicle while intoxicated, provided a valid reason for the warrantless entry and arrest of Ness. As such, the district court properly denied Ness's motion to suppress.[2]

**B. Deposition**

Ness maintains the district court erred in allowing the deposition of the Tobacco Hut employee to be read into evidence because the State failed to provide the necessary proof she was unavailable to testify. In response, the State contends, and our review of the record confirms, that Ness did not raise a constitutional challenge regarding his right to confront the witnesses against him at the district court level. Thus, insofar as Ness attempts to raise a constitutional challenge, it is not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

As an exception to the hearsay rule, Iowa Rule of Evidence 5.804(b)(1) provides for the admission of a deposition of an unavailable witness if the party against whom the testimony is offered had an opportunity and similar motives to develop the testimony by direct, cross, or redirect examination. Rule 5.804(a)(4) defines a witness as unavailable when the witness "[i]s unable to be present or testify at the trial or hearing because of death or then existing physical or mental

---

[2] We decline to consider the State's arguments regarding other possible applicable exceptions to the warrant requirement.

illness or infirmity." The State had the burden, as the proponent of the hearsay evidence, to prove it fell within an exception to the hearsay rule. *State v. Cagley*, 638 N.W.2d 678, 681 (Iowa 2001). We review the district court's decisions regarding hearsay claims for correction of errors at law. *Paredes*, 775 N.W.2d at 560. "This standard of review extends to determining whether statements come within an exception to the general prohibition on hearsay evidence." *Id.*

Here, the incident in question occurred in April 2014. The witness gave a discovery deposition to defense counsel regarding her observations approximately two months later, in June 2014. A review of the deposition shows that it was conducted by Ness's attorney,[3] and the attorney was allowed to conduct the deposition without objections or interruptions from the State. Additionally, the deposition took place at the request of the defendant— presumably to prepare for trial. On December 12, 2014, the witness contacted the State and indicated she had "mental health issues, health ailments, and other medical concerns that . . . require her to take numerous medications that affect her memory, ability to speak, and ability to function." The State filed a notice of unavailability regarding the witness on December 15, 2014.

Immediately before trial commenced the next day, the prosecutor made a professional statement, reiterating why the witness was unavailable to testify. Additionally, the prosecutor indicated the witness had "moved in with her mother because she requires a caretaker to function" and she could not "formulate complete sentences without having a lot of trouble." The State also provided

---

[3] The attorney who conducted the deposition was not the same attorney that represented Ness at trial.

medical records from the witness spanning from September to November 2014, which indicated the witness was on several medications for pain and anxiety. Neither at trial, nor here, does Ness contest the truthfulness of State's assertions regarding the witness's physical and mental health. Rather, he maintains these representations by the State are not sufficient to support the district court's finding the witness was unavailable.

Assuming without deciding the professional statement by the prosecutor and the medical records of the witness did not justify the court's determination that the witness was unavailable to testify, we find that any alleged error in admitting the deposition of the witness was harmless. Most, if not all, of the evidence from the admitted deposition was cumulative of the dispatch call that was admitted and played for the jury without objection. *See State v. Elliot*, 806 N.W.2d 660, 669 (Iowa 2011) ("Admission of hearsay evidence over a proper objection is presumed to be prejudicial unless the contrary is affirmatively established. The contrary is affirmatively established if the record shows the hearsay evidence did not affect the jury's finding of guilt. One way to show the tainted evidence did not have an impact on the jury's verdict is to show the tainted evidence was merely cumulative." (internal citations omitted)). Additionally, the evidence of Ness driving a vehicle while being intoxicated was also provided by the admission of the three other calls to dispatch as well as the testimony of a different employee from the Tobacco Hut and two of Ness's neighbors. The court did not err in allowing the witness's deposition to be read into evidence.

**IV. Conclusion**

Because the officer had probable cause to believe Ness had operated his vehicle while intoxicated, and an exigent circumstance of possible danger to the officer and neighbors existed, the officer was justified in entering Ness's home without a warrant and arresting him. As such, the district court properly denied Ness's motion to suppress. Additionally, even if the district court erred in deeming the witness unavailable, the deposition was merely cumulative of other evidence properly admitted, and its admission was harmless. We affirm.

**AFFIRMED.**