# IN THE COURT OF APPEALS OF IOWA

No. 22-0255
Filed September 13, 2023

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**DEWAYNE MICHAEL VEVERKA,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Jasper County, Thomas P. Murphy, Judge.

Dewayne Veverka appeals his conviction of third-degree sexual abuse, second offense. **AFFIRMED.**

Raya D. Dimitrova of Carr Law Firm, P.L.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Considered by Ahlers, P.J., Badding, J., and Vogel, S.J.* Buller, J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**VOGEL, Senior Judge.**

Dewayne Veverka appeals from his conviction for third-degree sexual abuse, second offense. He challenges the district court's admission of a forensic interview and the sufficiency of the evidence supporting his conviction. We affirm.

## I.      *Background Facts and Proceedings*

The supreme court set forth the facts and proceedings in the first appeal in this action. *State v. Veverka*, 938 N.W.2d 197 (Iowa 2020). Briefly, Veverka was charged with three counts of third-degree sexual abuse of his daughter, S.V., between May and November 2016. In November 2016, S.V. and her mother—Veverka's wife—reported to law enforcement that Veverka had inappropriately touched S.V., who was fourteen years old at the time. *Id.* at 201. "Specifically, S.V. said Veverka had touched S.V. under S.V.'s clothes on her breasts and vagina, that Veverka had digitally penetrated S.V.'s vagina, and that Veverka had forced S.V. to rub his erect penis." *Id.* In December, S.V. underwent a forensic interview, which was recorded on video. *Id.* After being charged, Veverka filed a motion in limine challenging the admissibility of S.V.'s forensic interview. *Id.* The State resisted Veverka's motion, arguing the video was admissible under the residual exception to hearsay. *Id.* Following an evidentiary hearing, the district court found the video was not admissible and granted Veverka's motion in limine. *Id.* at 201. The State appealed, and the supreme court found the district court erred in granting Veverka's motion.[1] *Id.* at 202–03. The supreme court vacated the district court's ruling and remanded for further proceedings. *Id.*

---

[1] Specifically, the supreme court concluded the district court erred in: stating it had discretion to admit or exclude the video; focusing on the testimonial nature of the

On remand, the State filed a motion to reconsider admissibility of the video. The court entered an order finding the video was material, trustworthy, and served the interests of justice. However, the court at the time did not determine whether the video was admissible, noting the State did not ask it to rule on necessity.

The case proceeded to a jury trial in December 2021. S.V. was among the witnesses who testified. However, S.V. could not remember details of the abuse, testifying that, not only had it been five years ago, but also she believed she had blocked those memories. The State then moved to admit the video under the residual exception, and the court agreed. The jury ultimately found Veverka guilty on all three counts. He appeals, challenging the court's admission of the forensic interview and the sufficiency of the evidence supporting his conviction.

## II.    Standard of Review

"[B]ecause the district court lacks 'discretion to admit hearsay in the absence of a provision providing for it' or deny the admission of hearsay if it falls within an exception," appellate courts "review the district court's evidentiary rulings on hearsay for errors at law." *State v. Thompson*, 982 N.W.2d 116, 121 (Iowa 2022) (citation omitted). We also review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022).

---

interview in addressing the evidentiary question at issue; and applying the law regarding the requisite findings for admissibility. *See Veverka*, 938 N.W.2d at 202–03.

### III.   *Residual Exception*

"Hearsay is a statement the declarant makes other than while testifying at the current trial that is offered 'to prove the truth of the matter asserted in the statement.'" *State v. Fontenot*, 958 N.W.2d 549, 555 (Iowa 2021) (quoting Iowa R. Evid. 5.801(c)(2)).   "Hearsay is generally inadmissible unless the rules of evidence, Iowa Constitution, or an Iowa Supreme Court rule provide otherwise." *Id.*

In admitting the forensic video, the district court relied on the exception for residual hearsay, which provides a hearsay statement is admissible if:

> (1) The statement has equivalent circumstantial guarantees of trustworthiness;
> (2) It is offered as evidence of a material fact;
> (3) It is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) Admitting it will best serve the purposes of these rules and the interests of justice.[2]

Iowa R. Evid. 5.807(a).

"Courts have often used the residual exception to admit the out-of-court statements of child sex abuse victims."   *State v. Skahill*, 966 N.W.2d 1, 11 (Iowa 2021).   However, the residual exception "should be used sparingly" depending "on the unique facts and circumstances of each case."   *Veverka*, 938 N.W.2d at 204. "The requirements of the residual exception can be summarized as 'trustworthiness, materiality, necessity, service of the interests of justice, and

---

[2] Rule 5.807 "was amended effective January 1, 2023, and applies to all actions filed on or after that date, as well as in trials and evidentiary hearings conducted on or after that date for actions filed before that date."   *State v. Maldonado*, 993 N.W.2d 379, 385 n.4 (Iowa Ct. App. 2023).   This amendment does not apply to Veverka, who was charged in March 2017 and ultimately tried in December 2021.

notice.'" *Skahill*, 966 N.W.2d at 10 (quoting *State v. Rojas*, 524 N.W.2d 659, 662–63 (Iowa 1994)). "These are not factors to be weighed; all five requirements must be satisfied." *Id.* Veverka challenges the district court's determination that the trustworthiness, necessity, and interests-of-justice requirements were met.

### A. Trustworthiness

"With respect to trustworthiness, the relevant consideration is whether the proffered evidence has 'circumstantial guarantees of trustworthiness.'" *Veverka*, 938 N.W.2d at 203 (quoting Iowa R. Evid. 5.807(a)(1)). Our supreme court identified several indicia of trustworthiness in a video of a child sex abuse interview:

> "[t]he interviewer asked [the child] open-ended, non-leading questions"; the questions "were not the kind that would prompt a child to fabricate the responses"; the child provided "a fairly detailed account of the abuse itself"; the child remembered other details regarding the circumstances; the descriptions of the sex acts were "beyond the experience of the average ten-year-old"; the child's "statements were consistent throughout the interview"; and "the videotape [was] more reliable than many other forms of hearsay because the trier of fact could observe for itself how the questions were asked, what the declarant said, and the declarant's demeanor."

*Veverka*, 938 N.W.2d at 202 (alterations in original) (quoting *Rojas*, 524 N.W.2d at 663). In ruling the forensic video sufficiently trustworthy, the district court found: "for the most part, the interviewer asked open-ended questions"; S.V. "provided detailed information"; even though S.V. was fourteen years old at the time and older than some other alleged child sex abuse victims, she "did not use adult vernacular to describe the Defendant's anatomy or the activities in which she said the Defendant engaged"; and "S.V.'s statements were consistent."

Without pointing to any specific examples, Veverka asserts the interviewer's questions were too leading and not sufficiently open-ended. We agree with the district court that the interviewer generally asked suitable open-ended questions. The interviewer's first few questions and statements about the alleged abuse are illustrative:

- You started talking about . . . okay I'm just gonna tell the things that are the truth and stuff, can you tell me a little more about what you were referring to?
- So what are the things that you're referring to about your dad?
- What happened?
- Well, you mentioned that you don't want your dad to go to jail.
- So you had a lot of fear.
- Did that happen one time or more than one time with your dad?
- And so you're saying that for a period of about six or seven months that things happened on a weekly basis, unless you were on your period week. I want you to go back in your mind to a time when that did happen, and I want you to tell me everything about that one specific time from the beginning before touching happened, through the middle with the touching, and then what happened after.

These questions and statements are not excessively leading; they are appropriately open-ended and in response to information S.V. just provided. As to other indicia of trustworthiness, S.V. provided detailed descriptions of the alleged abuse and her surroundings at the time. *See Rojas*, 524 N.W.2d at 663 ("In addition to providing a fairly detailed account of the abuse itself, [the child] remembered details such as where other family members were when the abuse occurred."). S.V. gave consistent answers, including before and after a six-minute break in the middle of the interview. *See id.* ("[The child's] statements were consistent throughout the interview."). The trained interviewer had over ten years of experience in conducting child sex abuse interviews. *See Neitzel*, 801 N.W.2d

at 623 (noting the interviewers "were educated and trained in conducting this type of interview"). We also observe the interview took place in December 2016, soon after conclusion of the alleged abuse and five years before the trial.

Veverka also maintains the interview lacks trustworthiness because S.V. "submitted multiple letters recanting her accusations but changed her accusations again at trial." At trial, S.V. acknowledged writing letters in 2018 stating in part the abuse "didn't happen." However, S.V. added context to those letters, testifying multiple people told her to drop the charges at the time. She also agreed that what she "said has happened in this case did in fact happen" and "everything that [she] said in that video [is] 100 percent the truth." S.V.'s testimony at trial insisting the abuse occurred distinguishes her claim from those alleged victims who recanted their claims during testimony. *See State v. Cagley*, 638 N.W.2d 678, 682 (Iowa 2001) (finding statements to police not sufficiently trustworthy when the alleged victim recanted during the motion in limine); *but see Rojas*, 524 N.W.2d at 663–64 (finding a videotaped interview sufficiently trustworthy despite the alleged victim's recantation at trial). It is for the jury to decide the weight given to S.V.'s conflicting statements. *See State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) ("The function of the jury is to weigh the evidence and 'place credibility where it belongs.'" (citation omitted)). Considering all indicia of trustworthiness, we find the videotaped interview sufficiently trustworthy. *See Veverka*, 938 N.W.2d at 202.

B.    *Necessity*

Veverka claims admission of the video was not a necessity because at trial, "[w]hen [S.V.] was asked about the alleged abuse, she was not as specific, but was still able to testify that she was inappropriately touched." However, "[t]he word

'necessity' here is not used in the absolute sense. The hearsay evidence only needs to be 'more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts,' as the rule requires." *Skahill*, 966 N.W.2d at 11 (quoting Iowa R. Evid. 5.807(a)(3)). "Importantly, in the residual exception context, the proffered hearsay evidence's probative value is not viewed in a vacuum." *Id.* (considering a video of a child sex abuse interview "in relation to the other evidence available to the State, particularly [the child's] live testimony"). The overarching question is whether the evidence "tend[s] to prove what happened to [the alleged victim] better than her trial testimony in which she was subject to cross-examination." *Id.*

At trial, S.V. provided general background information about the alleged abuse, testifying, "I know he touched me inappropriately." However, she acknowledged she did not "really remember much of anything else." She could not remember specifics about the abuse, believing she "unconsciously . . . blocked" those memories. When asked if she could remember the events between May and November 2016, she responded, "Not really anymore. I'm sorry." Thus, the evidence presented in the videotaped interview was not available through S.V.'s in-court testimony. *See Skahill*, 966 N.W.2d at 13–14 ("[W]hen the same evidence is available through in-court testimony, hearsay statements are generally not necessary under the residual exception."). The residual exception has been used in situations similar to this case: when the child's "testimony had a significant gap or weakness," "when the child's trial testimony was inconsistent and hesitant," or "when the child testified at trial to abuse but was unable to provide important details in their trial testimony." *Id.* at 14–15; *see also Rojas,* 524 N.W.2d at 663; *Neitzel,*

801 N.W.2d at 623–24. Furthermore, S.V's age—nineteen years old at trial—does not negate a finding of necessity due to her inability to recall the alleged abuse in detail and concerns she had wavered on her claims of abuse. *Cf. Fontenot*, 958 N.W.2d at 572 (McDonald, J., dissenting) (rejecting a finding of necessity where the witness "was a teenager at the time of trial," "was able to testify regarding the specific allegations of abuse in great detail," and "did not recant her allegations of sexual abuse"). Because at trial S.V. was unable to recall the details of the abuse and the recorded interview was more probative than her trial testimony, the State made the required showing of necessity. *See Skahill*, 966 N.W.2d at 11.

### C.  Interests of Justice

Veverka also claims admission of the video did not serve the interests of justice "because it was clear what S.V. was alleging through her testimony." "With respect to the finding regarding the interests of justice, evidence serves the interests of justice where '[t]he appropriate showing of reliability and necessity were made, and admitting the evidence advances the goal of truth-seeking expressed in Iowa Rule of Evidence [5.102]." *Veverka*, 938 N.W.2d at 204 (alterations in original) (quoting *Rojas*, 524 N.W.2d at 663). Again, S.V. could "[n]ot really" remember the abuse that took place between May and November 2016, other than that Veverka "touched [her] inappropriately." We also note S.V. and others testified family members were pressuring S.V. to drop the charges. Having found the State showed sufficient trustworthiness and necessity, we agree the interview also serves the interest of justice. *See Neitzel*, 801 N.W.2d at 622–23 (finding hearsay statements about sexual abuse were admissible under the residual exception after the child could not remember the events at trial).

Having found the requisite showings of trustworthiness, necessity, and interests of justice, we affirm the district court's admission of the interview video under the residual exception to the hearsay rule.

## IV. Sufficiency of the Evidence

Veverka also challenges the sufficiency of the evidence to support his conviction. He focuses on the reliability of S.V.'s testimony. Specifically, he argues, "S.V.'s testimony was so unreliable that it fails to support [his] conviction and the State's case in chief," and "when considering all of the evidence together, there is not enough corroborative evidence to support her claims."

For all three counts, the jury was instructed the State had to prove the following elements of third-degree sexual abuse:

> 1. Between May 1, 2016, and November 15, 2016, Mr. Veverka performed a sex act with [S.V.].
> 2. Mr. Veverka performed the sex act:
>      a. While [S.V.] was 14 or 15 years old and a member of the same household as Mr. Veverka and Mr. Veverka was 4 or more years older; or
>      b. [S.V.] was Mr. Veverka's natural daughter.
> 3. Mr. Veverka and [S.V.] were not then living together as husband and wife.

Veverka specifically challenges the finding that he performed a sex act with S.V. The jury viewed the interview in which S.V. described Veverka committing multiple, specific sex acts. S.V. stated the abuse took place "skin to skin," "a handful of times," "over a span of about six months." And she explained that "even though he entered my body twice, he still touched my genitals even if he didn't go inside." She described that as he "got[ ] more confident," "he tried to do different and other things." And she specified "[i]t started about in May, and I finally told my mom about in November, and he touched me a few days before I told [her]."

Veverka points to *State v. Smith*, in which this court found the testimony from multiple witnesses about "alleged abuse are inconsistent, self-contradictory, lacking in experiential detail, and, at times, border on the absurd." 508 N.W.2d 101, 103 (Iowa Ct. App 1993). However, our supreme court found *Smith* "inconsistent with our appellate standard in this case, which permits reversal only if the district court has abused its discretion, and which requires deference to the district court's resolution of the disputed factual issue." *State v. Trane*, 984 N.W.2d 429, 437 (Iowa 2023); *see also State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022) ("*Smith* is an outlier case. It has been criticized in the commentary, and it has not been followed in any sexual abuse case in Iowa since. The primary flaw in *Smith* is that it is inconsistent with the standard of appellate review of jury verdicts, which requires that the evidence be viewed in the light most favorable to the verdict and which requires deference to the jury's resolution of disputed factual issues."). Even assuming *Smith* remains good law, S.V.'s statements were not so inconsistent or otherwise deficient that the district court was required to find her unbelievable.

Furthermore, other witnesses corroborated S.V.'s statements. S.V.'s mother testified: S.V. disclosed the abuse to her, Veverka admitted to her that he touched S.V., and Veverka asked her to convince S.V. to lie so the charges against him would be dropped. S.V.'s maternal grandfather testified Veverka admitted to him that he did "the crime" and other family members pressured S.V. to drop the charges. A social worker testified Veverka admitted to abusing S.V. on at least one occasion while the social worker was present.

Questions of credibility are for the factfinder. *See State v. Laffey*, 600 N.W.2d 57, 59 (Iowa 1999) ("[I]t is for the [factfinder] to judge the credibility of the

witnesses and weigh the evidence.").  Upon our review, we are "highly deferential to the jury's verdict," and "[w]e will affirm the jury's verdict when the verdict is supported by substantial evidence."  *State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021).  It was within the jury's province to find S.V.'s description of Veverka engaging in sexual contact with her credible and find Veverka's denial of abuse not credible.  *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) (finding "the alleged victim's testimony is by itself sufficient to constitute substantial evidence of defendant's guilt" of sexual abuse).  The statements of S.V. and corroborating testimony are sufficient evidence to support Veverka's conviction on all three counts.

## V.     *Conclusion*

The district court did not err in admitting the forensic interview into evidence, and Veverka's conviction for three counts of third-degree sexual abuse is supported by substantial evidence.

**AFFIRMED.**